Jon S. Dawson
Eric J. Jenkins
Davis Wright Tremaine LLP
701 W. 8th Avenue, Suite 800
Anchorage, Alaska  99501
(907) 257-5300

Attorneys for HarperCollins Publishers, L.L.C.
  and Todd Lewan

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

PHILLIP WILEY,                                    )
                                                  )
                        Plaintiff,                )
                                                  )    Case No. 3:05 - cv - 00118 (TMB)
vs.                                               )
                                                  )
HARPER COLLINS PUBLISHERS, INC.                   )
and TODD LEWAN,                                   )
                                                  )
                        Defendants.               )
_____          )

OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND AMENDED
COMPLAINT, AND MOTION IN THE ALTERNATIVE TO DISMISS PLAINTIFF'S
CLAIMS FOR PUBLIC DISCLOSURE OF PRIVATE FACTS, INTRUSION UPON
SECLUSION, AND APPROPRIATION OF NAME AND LIKENESS

    Defendants HarperCollins Publishers, L.L.C. ("HarperCollins") and Todd Lewan

("Lewan") submit this memorandum in opposition to plaintiff Phillip Wiley's ("Wiley")

motion for leave to file his Second Amended Complaint, and in support of defendants'

motion, in the alternative, for dismissal of Wiley's claims for public disclosure of private

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

facts, intrusion upon seclusion, and appropriation of name or likeness on the ground that they do not state a claim.

Wiley's proposed amendment separates what was previously a unitary claim for "invasion of privacy" into four separate counts based on the four privacy torts—namely, publication placing plaintiff in a false light, public disclosure of private facts, intrusion upon seclusion, and appropriation of name or likeness. This Court has previously ruled that Wiley states a claim only with respect to false light. See Order dated September 15, 2005. Wiley should not be permitted to amend with respect to the other three privacy claims, because Wiley does not plead facts that would support any of them:

*First,* Wiley does not state a claim for public disclosure of private facts, because Wiley alleges that the statements at issue in The Last Run are false. The public disclosure tort, on the other hand, requires as an essential element that the private facts disclosed be true. In his proposed Second Amended Complaint, Wiley takes the novel approach of arguing that the allegations that he contends are false for purposes of his defamation claim would support a claim for public disclosure of private facts if they are true. This is not a permissible example of pleading in the alternative and Wiley does not state a claim for public disclosure of private facts.

*Second,* Wiley does not state a claim for intrusion upon seclusion, because Wiley does not allege any intrusion within the scope of the tort. The tort of intrusion upon seclusion protects against the use of improper *means* to pry into a person's private affairs.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
AND MOTION IN THE ALTERNATIVE TO DISMISS PLAINTIFF'S CLAIMS  - 2
ANC 87508v1 3960028-6

Wiley does not allege an improper intrusion, but only the publication of statements he contends are false.  If there is a privacy claim here, it is for false light, but not for intrusion upon seclusion.

*Third,* Wiley's claim for appropriation of name or likeness fails because this Court has already held that Wiley's name and likeness have no commercial value, and were not appropriated within the meaning of the appropriation tort.  The inclusion of a person in a work about historical events does not state a claim for appropriation of name or likeness.

The motion to amend should be denied on the grounds that, with respect to Wiley's claims for public disclosure of private facts, intrusion upon seclusion, and appropriation of name or likeness, such amendment would be futile.  In the alternative, if Wiley is permitted to amend, each of these three claims should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

<u>BACKGROUND</u>

Defendants Lewan and HarperCollins are the author and publisher, respectively, of <u>The Last Run</u>, a true account of the 1998 sinking of the Alaska fishing vessel La Conte and the heroic efforts of the U.S. Coast Guard to rescue its crew.  <u>The Last Run</u> is told through the eyes of the fishermen who survived the sinking of the La Conte.  More than simply a narrative of that tragedy, <u>The Last Run</u> acquaints the reader with the sometimes troubled lives of the La Conte crew, and chronicles the events that led them to fish a notoriously dangerous patch of ocean in the middle of winter.

**Davis Wright Tremaine LLP**
Law Offices
Suite 800 · 701 West 8ᵗʰ Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

Wiley is the owner of the fishing vessel Min E and employed two of the surviving fishermen from the La Conte, Mike DeCapua ("DeCapua") and Robert Doyle ("Doyle"), immediately prior to their service on the La Conte. Wiley's name does not appear on the cover of the book, nor does Wiley contend that his name was used in any promotional materials for the book. See Exhibit A to Motion to Dismiss filed June 29, 2005. No contention is made that Lewan used intrusive means to gain access to personal information about Wiley nor, apart from one phone call to Wiley in November, 2003, does Wiley allege that he had any contact with Lewan or HarperCollins. Second Amended Complaint at para. 34. Wiley simply contends that various statements about him in The Last Run are false, and that he is a private person who was unwillingly thrust into the spotlight by his inclusion in a popular book.

A.      The Statements About Wiley in The Last Run.

The passages in The Last Run that Wiley finds objectionable are primarily in Chapter 7 of the book, and all involve statements made in exchanges between DeCapua and other crew. For Doyle and DeCapua, the decision to join the crew of the La Conte was in large part a financial one. In contrast to the skipper of the La Conte, Wiley was not inclined to risk dangerous weather for the prospect of making extra money and thus was not delivering large paychecks to his crew. This frustrated the always impetuous DeCapua, who became increasingly critical of Wiley in the period that led up to DeCapua and Doyle's decision to leave the Min E.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

Lewan sets the scene for Chapter 7 by stating that DeCapua "was in a very evil mood" one afternoon when he found Bob Doyle playing pool in a favorite haunt:

> "Listen," DeCaua said, "All you dumb fucks ever do is shoot pool. Fuck pool. Say, Bob, do you want to play pool all your life?"
>
> "You know something better?"
>
> "How about fishing?"
>
> DeCapua told him that one of the deckhands on the Min E had gotten into a scrap with the skipper over holiday time. The skipper was not letting crewmen go over the holidays. So the deckhand split.

TLR at p.46.[1]  Wiley contends that this contention is false, and portrays him as an unfair and unreasonable skipper. Second Amended Complaint at paras. 29(a)-(b).

The foregoing exchange is followed by a scene in which DeCapua gives Doyle, then a new crew member, a hard time about having made friends with the skipper (Wiley) during his first fishing trip:

> Bob Doyle was not nearly as upset as the others. He had made it through his first commercial fishing trip without a major screwup. And he felt he had hit it off with the skipper, Phil Wiley. After they had tied up, Wiley walked up to him and invited him to stay on another month, and to sleep on the boat, too, if he liked.
>
> "Phil's got a crush on you," DeCapua said. He and Bob Doyle were walking back from the ANB to the Basement.

---

[1] Relevant portions of The Last Run ("TLR") were filed as Exhibit A to the Defendants' motion to dismiss filed June 29, 2005.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

"What you do, anyway?  Give him something special in his rack?"

"He's a good guy." [by Doyle]

"He's a cocksucker." [by DeCapua]

Wiley, he explained, had shortchanged him out of three hundred dollars after a trip the previous year . . .

TLR at pp. 46-47.  Wiley contends that readers will interpret the term "cocksucker" literally and reach the erroneous conclusion that Wiley is homosexual, performs fellatio, and was engaged in a sexual relationship with Doyle.  Second Amended Complaint at paras. 28(a), 39.

DeCapua's denunciation of Wiley as a "cocksucker" was followed by DeCapua's recitation of a dispute he had had with Wiley that led him to feel that way:

Wiley, he explained, had shortchanged him out of three hundred dollars after a trip the previous year.  Once they had beached and the rest of the crew had split their shares and gone to the Pioneer Bar, DeCapua pulled Wiley aside. He told him, "Okay, I don't care what you do to the rest of the crew.  They're not here.  It's just you and me."

"Go on."

"You owe me three hundred dollars.  I want my three hundred dollars.  You give me my three hundred dollars and I keep my mouth shut and go home.  You don't give me my three hundred dollars and I'm going to the crew.  First I'll tell them what a retro check is.  Then I'll tell them you owe them a retro check.  Don't think I won't.  I got all the catch figures.  I want my money and I want it now."

Wiley looked blankly at him.  "Is that it?"

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

1

"That's it."

2

"Fuck off." [by Wiley]

3

So Mike DeCapua marched back to the Basement, pulled out
a phone book and called every marine insurance company
listed in the yellow pages until he found Wiley's. He told the
agent that his client was a high risk.

4

5

6

7

The agent asked him why.

8

"Well your guy is not paying the crew, which makes the crew
mad. And they're going to retaliate by hurting the vessel
when Mr. Wiley is not around. And you are the ones who are
insuring him."

9

10

11

"I see."

12

"You guys are going to wind up paying off the boat to the
bank because it's going to get lost at the dock sometime
because of his behavior."

13

14

15

"I see," the agent said.

16

"And what's more, the vessel ain't safe. Her mast is
unsteady, her deck is loose from the rails, and she needs
extensive hull work. And he ain't doing it."

17

18

Three days later, a marine architect showed up to inspect the
Mine E. He took some notes, made out a report and sent a
letter to Phil Wiley not long after. It said that unless repairs
were affected, the boat would no longer be insured.

19

20

21

22

TLR at p.47.

23

Wiley denies that he ever shortchanged DeCapua of pay, and contends that any

24

assertions that he operated an unsafe vessel or failed to properly maintain the Min E are

25

false. Second Amended Complaint at para. 29(f).

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

The final passage in Chapter 7 concludes with DeCapua claiming that Wiley tried to get back at him for contacting the insurance company by making sure the boat did not catch enough fish to give DeCapua a good paycheck – an allegation that Doyle rejects as nonsense:

> "But he sure made me pay," DeCapua muttered.

> "How do you mean?" [by Doyle]

> "Well, when Phil takes me out, we work just enough to get a small catch, to cover some expenses he's got, and then we come right back in. There's never enough left over for me to get a good paycheck."

> "Oh."

> "He can be a bastard, all right."

> The Min E sailed again on January 15. Bob Doyle and Mike DeCapua were on it. They worked the lower half of the Chatham Strait and returned to Sitka with one thousand pounds of black cod.

> "That bastard," DeCapua muttered. He and Bob Doyle were walking up the dock. "That fucking bastard did it to me again."

> "Listen Mike," Bob Doyle said. "I don't know if he's doing it on purpose, I mean, I don't see the sense in it."

> "In what?"

> "In shooting himself in the foot," Bob Doyle said. "I mean, why would he do that?"

> Mike DeCapua laughed.

OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
AND MOTION IN THE ALTERNATIVE TO DISMISS PLAINTIFF'S CLAIMS  - 8
ANC 87508v1 3960028-6

1    "People do it all the time," he said.

2    TLR at p.48. Wiley contends that this exchange falsely portrays him as fishing black cod

3    out of season, and of cheating his crew. Second Amended Complaint at paras. 29(h)-(l).

4

5    DeCapua's griping about pay, skippers, and other issues was a frequent theme

6    throughout the book and led the foreman of the La Conte to threaten to "throw his candy

7    ass overboard." TLR at p. 108. Ironically, while berating the skipper of the La Conte,

8    DeCapua actually pays Wiley a backhanded compliment by saying that he made more

9    money fishing with Wiley:

10

11        "This is make-work. Make-work for the crew. Hell, I just
         quit Phil Wiley. This is Phil crap all over again. Except
12        when I was with that Phil, I made money. This is Phil Junior,
         and he don't make money."
13

14   Id. at p.132. The often fickle DeCapua, however, expressed a much different sentiment

15   when the La Conte later experienced great success prior to succumbing to a storm at the

16   Fairweather Grounds:

17

18        "This," DeCapua told Bob Doyle in the shed, "is how the Min
         E could have produced, Bob, if Phil had ever decided to bust
19        his ass."

20        "Think so?"

21
         "Oh, I know so. That lazy prick."
22

23        "Old Mike."

24   TLR at p. 149.

25

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

Despite DeCapua's various complaints about Wiley, <u>The Last Run</u> closes with DeCapua talking to Doyle about trying to get back on the crew of Wiley's boat. DeCapua tells Doyle that Wiley may take him back if DeCapua "grovel[s] enough." <u>Id</u>. at p. 354.

B.    <u>Wiley's First Attempt at Pleading Claims for Invasion of Privacy</u>.

Wiley's First Amended Complaint in this matter asserted claims for defamation, invasion of privacy, and unjust enrichment. <u>See</u> Amended Complaint (dated June 16, 2005) at pp.11-14. Although Wiley mentioned each of the four invasion of privacy torts – false light, public disclosure of private facts, intrusion upon seclusion, and appropriation of name and likeness – in his First Amended Complaint, he pleaded these claims as a single unitary count. <u>See</u> <u>Id</u>. at paras 76-86 (Count II).

The Defendants moved to dismiss Wiley's First Amended Complaint for failure to state a claim upon which relief can be granted. Although the Court declined to dismiss the unitary invasion of privacy count, it was careful to note in its order that the only invasion of privacy claim that was potentially viable was the false light claim:

> Lewan and Harpers argue that Wiley's invasion of privacy claims fail for a number of reasons. Wiley is not a celebrity whose name and endorsement or appearance have been shown to have value that Harpers and Lewan appropriated. <u>Nor do the facts alleged in the complaint suggest a claim for invasion of privacy separate and apart from the defamation claim.</u> The Court finds Wiley's argument that <u>a jury could find that the book placed Wiley in a "false light"</u> persuasive. <u>On that ground alone, and without prejudice to a motion for</u>

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8ᵗʰ Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

> summary judgment after the facts are developed, the Court
> will deny the motion as to the invasion of privacy claim.

Order dated September 15, 2005, at p. 2 (emphasis added).  In a subsequent Order dated December 15, 2005, this Court dismissed Wiley's claim for unjust enrichment.

C.      Wiley's Second Amended Complaint.

The Second Amended Complaint that Wiley seeks to file with this Court asserts not only claims for defamation and false light, but also seeks to reassert each of the other three privacy torts, this time as separate counts.  Wiley states that the "essence" of the proposed amendment is to separate the previously unitary invasion of privacy claim into four separate counts.  Memorandum in Support of Motion to Amend at p.2.

As he did in each of his prior complaints, Wiley again contends that all of the statements at issue in The Last Run are false and defamatory.  Second Amended Complaint at paras. 67, 71.  Now, however, Wiley also alleges in the alternative that if the statements are ultimately proven to be true, then defendants are liable for publishing true private facts.  Second Amended Complaint at para. 77(a).  Wiley alleges no facts in support of his claims for intrusion upon seclusion or appropriation of name and likeness other than those that are asserted in support of his claims for defamation and false light invasion of privacy.   Second Amended Complaint at paras. 78-84.

## ARGUMENT

Wiley's motion for leave to file his Second Amended Complaint should be denied or, in the alternative, his claims for public disclosure, intrusion upon seclusion, and

appropriation of name or likeness should be dismissed for failure to state a claim.  As this

Court observed in its September 15, 2005 Order, the invasion of privacy claims that

Wiley seeks to assert are merely derivative of his claim for defamation.  Wiley's Second

Amended Complaint does not alter this fact, nor does Wiley allege any wrongful conduct

by the Defendants apart from the publication of a book that Wiley claims is false and

defamatory.  Wiley does not identify any intimate but true facts that were disclosed by

the Defendants; he does not allege that the Defendants invaded a physical or sensory zone

of privacy in gathering information to write The Last Run; and he does not allege that his

name was used for advertising or other commercial purposes.  Consequently, Wiley's

Second Amended Complaint, like the prior two, does not state a claim for public

disclosure, intrusion upon seclusion, or appropriation of name or likeness.  The proposed

amendment of Wiley's complaint would be futile and should be rejected.

A.    Amendment of a Complaint is Not Appropriate Where the Claims Asserted by the
      Amendment Are Subject to Dismissal Under Fed R. Civ. P. 12(B)(6).

      Fed. R. Civ. P. 15(a) provides that leave to amend complaints shall be "freely

given when justice so requires."  Leave to amend need not be granted, however, when the

proposed amendment would be futile.  Foman v. Davis, 371 U.S. 178, 182 (1962).

Amendment of a complaint "is futile when the proposed amendment would not permit

the complaint to survive a motion to dismiss."  Miller v. Calhoun County, 408 F.3d 803,

817 (6th Cir. 2005).  See also Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 538

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

(9th Cir. 1989) ("[l]eave to amend need not be given if a complaint, as amended, is subject to dismissal").

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) if the facts alleged in the complaint, taken as true, would not entitle the plaintiff to any relief, either because the pleadings lack "a cognizable legal theory" or because they do not contain "sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In this regard, the Ninth Circuit has made clear that "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." In re Verifone Securities Litigation, 11 F.3d 865, 868 (9th Cir. 1993) (citation omitted).

The facts alleged in Wiley's Second Amended Complaint will not support claims for public disclosure of private facts, intrusion upon seclusion, or appropriation of name or likeness. Consequently, his motion to amend should be denied as futile or, if amendment is permitted, these claims should be dismissed pursuant to Fed. R. Civ. P. 12(b0(6) for failure to state a claim upon which relief can be granted.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

B.    The Defendants Have Not Disclosed Any Private Embarrassing Facts About Wiley.

Count III of Wiley's Second Amended Complaint asserts a claim for public disclosure of private facts.  This claim fails because Wiley has not identified any intimate private truths about him that were disclosed in The Last Run.

Courts have repeatedly recognized that "an essential element of the tort of public disclosure of private facts is that the facts at issue be true."  Tyne v. Time Warner Entertainment Co., 204 F.Supp.2d 1338, 1344 (M.D. Fla. 2002).  The Ninth Circuit Court of Appeals reached the same conclusion in Leidholdt v. L.F.P., Inc., 860 F.2d 890, 895 (9th Cir. 1988):

> Leidholdt argues that Hustler's article, by saying she is "sexually repressed," that she thinks sex is "humiliating and painful," and that she hates men, hates sex, and hates herself, placed private matters before the public in a very offensive way.  This fails, however, to state a claim for public disclosure of private facts because an essential element of that tort is that the facts at issue be true.  Sipple, 201 Cal.Rptr. at 668; Restatement (Second) of Torts, Special Note to § 652D. Leidholdt has not argued that Hustler revealed any embarrassing private *truths* about her.

Id.  (emphasis added).  See also Restatement Second of Torts, Special Note to § 652 D ("[t]his Section provides for tort liability involving a judgment for damages for publicity given to true statements of fact").

Not only must the facts disclosed be true, but they must be "so intimate that their disclosure to the public is deeply embarrassing to the person thus exposed."  Haynes v.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

<u>Alfred A. Knopf, Inc.</u>, 8 F.3d 1222, 1229 (7th Cir. 1993).  For example, a narrative of the plaintiff's sexual activities, or the release of information from his or her medical records, can in some cases support a public disclosure claim.  <u>Id</u>.  In contrast, the <u>Haynes</u> court held that a book describing plaintiff's heavy drinking, unstable employment, and his irresponsible behavior towards his wife and children did not constitute the tort of public disclosure of private facts because, among other things, the book did not reveal intimate details of the plaintiff's life.  <u>Id</u>. at 1230.

As he did in his First Amended Complaint, Wiley alleges in his Second Amended Complaint that each and every one of the statements in <u>The Last Run</u> with which he takes issue, intimate or otherwise, is false.  <u>See</u> Second Amended Complaint at para. 71 ("[t]he statements of Defendants as referenced in this Count I (defamation) were and are not true").  However, Wiley also asserts that the facts which he alleges to be false and defamatory in Count I would support a public disclosure claim if in fact they are true:

> As an alternative allegation regarding the accuracy and truthfulness of the statements, inferences and representations made by Defendants in The Last Run regarding Plaintiff, as stated in paragraphs 28 through 59 above, some of such statements, if determined by a jury or otherwise to be true, inferences or representations are or were true though private facts . . .

Second Amended Complaint at para. 77(a).

While Fed. R. Civ. P. 8(e)(2) permits a party to plead in the alternative, it qualifies this right by stating that "all statements shall be made subject to the obligations set forth

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

in Rule 11." Consequently, "a pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question." <u>American Intern. Adjustment Co. v. Galvin</u>, 86 F.3d 1455, 1461 (7th Cir. 1996). <u>See</u> <u>also</u> <u>Gr. Lakes Higher Educ. v. Austin Bank</u>, 837 F.Supp. 892, 894-95 (N.D.Ill. 1993) (same).

Wiley cannot claim not to know if he is a homosexual who performs fellatio; or if his vessel required repairs; or if he withheld pay from his crew; or if he fished for black cod in January. On the contrary, Wiley affirmatively and repeatedly insists that the statements at issue in <u>The Last Run</u> are false. <u>See</u>, for instance, paras. 67 and 71 of the Second Amended Complaint. Neither the Civil Rules nor common sense permit Wiley to bring an action for publication of true private facts under such circumstances.

Furthermore, of the various statements at issue in <u>The Last Run</u>, the only statements that touch on an intimate private matter within the meaning of the public disclosure tort (if such statements were true) are those which Wiley claims make him out to be gay. Any statements that Wiley withheld pay from crewmen, or repaired his vessel, or fished for black cod in January concern Wiley's public conduct in commercial matters, and not the intimate details of his personal life. The tort of disclosure of private facts does not prohibit the publication of statements concerning a person's public or commercial conduct, and there are no policy reasons why such conduct should be kept a secret. Consequently, even if such statements are ultimately shown to be true, they will not support a claim for publication of intimate private facts.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

In sum, Wiley cannot make out a claim for disclosure of true private facts based on statements he says are false; and he cannot make out such a claim for statements relating to the public conduct of his business even if defendants prove such statements to be true.  Wiley's motion to amend should therefore be denied, or alternatively, HarperCollins' motion to dismiss for failure to state a claim should be granted.

C.    Wiley Cannot State a Claim for Intrusion Upon his Seclusion.

Count IV of Wiley's Second Amended Complaint alleges that the Defendants intruded upon Wiley's mental solitude and seclusion.  However, the only facts alleged in support of that claim are the publication of The Last Run and the use of Wiley's name and that of his vessel.  Second Amended Complaint at para. 78.  This is not sufficient to state a claim for intrusion upon seclusion.

The Alaska Supreme Court recognized the tort of intrusion upon seclusion in Leudtke v. Nabors Alaska Drilling, Inc., and held that:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.

768 P.2d 1123, 1133 (Alaska 1989) (quoting Restatement (Second) of Torts § 652B).  As examples of such intrusions, the Restatement lists:  tapping plaintiff's telephone wires, opening personal mail, or use of defendant's senses to oversee or overhear plaintiff's private affairs.  Restatement (Second) of Torts § 652B cmt.b.  The act of publication is

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

not such an intrusion:  "plaintiff fails to state a claim for invaded seclusion if the harm

flows from publication rather than the intrusion."  Thomas v. Pearl, 998 F.2d 447, 452

(7th Cir. 1993), cert. denied, 510 U.S. 1043 (1994) (emphasis added).

In Wolf v. Regardie, 553 A.2d 1213, 1218 (D.C.App. 1989), the court was faced

with a situation in which the plaintiff objected to publication of an article that he believed

intruded upon his private affairs and concerns.  The reporter who wrote the article had

gathered information about the plaintiff from a variety of sources, including third-parties

and public records.  No contention was made that the reporter had used offensive means

to gather information for the story.  On these facts, the Wolf court held that the plaintiff

had not stated a claim for intrusion upon seclusion, and noted that "appellant has

misconceived the kind of invasion that this cause of action seeks to address."  Id. at 1217.

"Gathering information about [another person] from third parties, even if pursued using

subterfuge and fraud, cannot constitute an intrusion upon [that person's] solitude or

seclusion."  Id. at 1218.

Nowhere in his Amended Complaint does Wiley contend that Lewan used highly

offensive means to obtain information from Wiley in drafting The Last Run.  Indeed,

apart from a single phone call, Wiley does not even allege that the two have had any

contact.  Second Amended Complaint at para. 34; TLR at p.48.  Wiley's claim is thus

based entirely upon whatever harm is alleged to have been caused by publication of The

Last Run.  Because publication does not constitute an intrusion for purposes of the tort,

OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
AND MOTION IN THE ALTERNATIVE TO DISMISS PLAINTIFF'S CLAIMS  - 18
ANC 87508v1 3960028-6

Wiley fails to state a claim for intrusion upon seclusion. <u>Thomas</u>, 998 F.2d at 452;

<u>Leudtke</u>, 768 P.2d at 1133.

D.    <u>The Defendants Have Not Wrongfully Appropriated Wiley's Name or Likeness</u>.

Wiley's final invasion of privacy claim asserts that the Defendants wrongfully

appropriated his name and likeness by including offensive statements about Wiley and

his fishing vessel in <u>The Last Run</u>.  This claim fails because the Defendants have not

sought to trade off any intrinsic commercial value associated with Wiley's name or

likeness.  Indeed, this Court has already held that "Wiley is not a celebrity whose name

and endorsement or appearance have been shown to have value that Harpers and Lewan

appropriated."  Order dated September 15, 2005, at p.2.

Courts considering claims for wrongful appropriation have repeatedly recognized

that the tort of wrongful appropriation "does not protect one's name per se; rather, it

protects the value associated with that name." <u>Matthews v. Wozencraft</u>, 15 F.3d 432, 437

(5th Cir. 1994).

> No one has the right to object merely because his name or his
> appearance is brought before the public, since neither is in
> any way a private matter and both are open to public
> observation.  It is only when the publicity is given for the
> purpose of appropriating to the defendant's benefit the
> commercial or other values associated with the name or the
> likeness that the right of privacy is invaded.  The fact that the
> defendant is engaged in the business of publication, for
> example of a newspaper, out of which he makes or seeks to
> make a profit is not enough to make the incidental publication
> a commercial use of the name or likeness. Thus a newspaper,
> although it is not a philanthropic institution, does not become

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

> liable under the rule stated in this Section to every person
> whose name or likeness it publishes.

Restatement (Second) of Torts § 652C, cmt. d.  <u>See</u> <u>also</u> <u>Matthews</u>, 15 F.3d at 437

(appropriation of name or likeness only becomes actionable when used to advertise

products or for similar commercial purpose).

In <u>Matthews</u>, the plaintiff brought suit for appropriation of name or likeness based

upon his inclusion as a character in a book about corruption among police narcotics units.

Because one of the characters in the story was based upon him, Matthews argued that

"his life story was appropriated for [the defendant's] commercial benefit."  <u>Id</u>. at 437.

The <u>Matthews</u> court rejected this argument, holding that the literary use of a person's life

story, "while interesting to readers and film-goers, is not a name or likeness for purposes

of applying the misappropriation doctrine."  <u>Matthews</u>, 15 F.3d at 437.  A claim for

appropriation of name or likeness is stated only when the defendant has capitalized upon

the commercial or other intrinsic value associated with a person's name for advertising or

similar purposes.  <u>Id</u>. at 437-38.  <u>See</u> <u>also</u> <u>Tyne</u>, 204 F.Supp.2d at 1341-42 (no cause of

action for appropriation because plaintiff's names and likenesses were not used "to

directly promote" movie <u>The Perfect Storm</u>); <u>Hoffman v. Capital Cities/ABC, Inc.</u>, 255

F.3d 1180 (9th Cir. 2001) (no violation of right of publicity where depiction of plaintiff

was not used primarily to propose a commercial transaction); <u>Reeves v. Fox Television</u>

<u>Network</u>, 983 F. Supp. 703, 710 (N.D. Ohio 1997) (claim for appropriation of name or

likeness dismissed where plaintiff failed to allege that his name had any intrinsic value

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

that defendant exploited for commercial or similar uses); <u>Cox v. Hatch</u>, 761 P.2d 556, 564 (Utah 1988) ("the complaint fails because it must allege that the plaintiffs' names or likenesses have some intrinsic value that was used or appropriated for the defendants' benefit").

Wiley was not used in any commercial manner to promote <u>The Last Run</u>, but rather appeared in the book solely as a character, in a couple of brief passages several chapters into <u>The Last Run</u>.  He does not appear on the cover of <u>The Last Run</u> or in the book jacket.  <u>See</u> Exhibit A to Motion to Dismiss (filed September 29, 2005).  Indeed, a reader would not even be aware of Wiley's minor part in the story unless he or she had first bought <u>The Last Run</u>, and read as far as Chapter 7.  The Defendants in no way attempted to capitalize upon any commercial value associated with Wiley's name, and this Court has already found that Wiley's name has no such value.  Order dated September 15, 2005, at p.2.  Consequently, Wiley cannot state a claim for misappropriation of his name or likeness.

<u>CONCLUSION</u>

For the foregoing reasons, Wiley's motion for leave to file his Second Amended Complaint should be denied or, in the alternative, his claims for public disclosure of

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

private facts, intrusion upon seclusion, and appropriation of name or likeness should be

dismissed for failure to state a claim upon which relief can be granted.

Dated this __15th__ day of February, 2006.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants


By:___s/ Jon S. Dawson_____
      Jon S. Dawson, ABA # 8406022
      Eric J. Jenkins, ABA# 0011078
      701 W. 8th Ave., Suite 800
      Anchorage, AK  99501
      Phone: (907) 257-5300
      Fax: (907) 257-5399
      jondawson@dwt.com
      ericjenkins@dwt.com

Certificate of Service:

I certify that on  February 15th, 2006, a true and correct copy
of the foregoing Opposition to Motion for Leave to File Second Amended
Complaint, and Motion in the Alternative to dismiss Plaintiff's Claims for
Public Disclosure of Private Facts, Intrusion Upon Seclusion, and Appropriation
of Name and Likeness was served electronically on:

Michael Hough
3733 Ben Walters Lane #2
Homer, Alaska  99603

   s/ Janet Eastman_____
Janet Eastman

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
AND MOTION IN THE ALTERNATIVE TO DISMISS PLAINTIFF'S CLAIMS  - 22

ANC 87508v1 3960028-6