**C. MICHAEL HOUGH**
Attorney at Law
3733 Ben Walters Lane, #2
Homer, Alaska 99603
Telephone: (907) 235-8184
Fax: (907) 235-2420
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF ALASKA

| | |
|---|---|
| PHILLIP WILEY,<br><br>                                        Plaintiff,<br><br>vs.<br><br>HARPERCOLLINS PUBLISHERS, INC. and<br>TODD LEWAN,<br>                                        Defendants. | REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT<br><br><br>Case No.:  3:05 – cv – 00118(TMB) |

Plaintiff responds to Defendants' Opposition regarding Plaintiff's Motion for Leave to File Second Amended Complaint.  Defendants have also moved pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss Plaintiff's Second Amended Complaint with regard to Plaintiff's claims for intrusion upon the seclusion and solitude of Plaintiff, disclosure to the public of private facts, and appropriation of Plaintiff's name and vessel based on failure to state a claim upon which relief may be granted (Docket #42), which is opposed in a separate pleading.  The arguments of the parties regarding Defendants' opposition to Plaintiff's Motion for Leave to File Second Amended Complaint are similar to the issues discussed in Defendants' Motion to Dismiss and are similar in that Defendants' Opposition regarding the Second Amended Complaint is based on Plaintiff not stating all essential elements for his claims, as well as Defendants' unsupported belief that it is impossible for Plaintiff to do so.  Plaintiff's response to Defendants' Motion to Dismiss

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

and Defendants' Opposition regarding the Second Amended Complaint have been separated and when the same arguments or statements apply to with issues, they are duplicated, so that each can be considered independent of the other.

### 1. Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15 places leave to amend, after a brief period of time in which a party may amend as a right, within the sound discretion of the trial court. In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 which is to facilitate a decision on the merits, rather than on the pleadings or upon technicalities. Accordingly, Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality." United States v. Webb, 655 P.2d 977, 1981 U.S. App. LEXIS 17946 (9th Cir., September 8, 1981, Decided). This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties. It is, however, subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice, is not sought in bad faith, and does not constitute an exercise in futility. DVD Programs, Ltd. V. Leighton, 833 F.2d 183, 1987 U.S. App. LEXIS 15563 (9th Cir., November 27, 1987, Filed).

The proposed Second Amended Complaint in this case does not add additional claims; it clarifies the ones which this court has already found were viable at this stage of discovery. It does remove at this early state of discovery Defendants' claims of confusion regarding Plaintiff's claims and allows this case to be tried on the merits of the case. Defendants are not prejudiced and discovery has barely started.

Dismissal of a claim without leave to amend is improper unless it is clear that the claim could not be saved by any amendment. Livid Holdings Ltd v Salomon Smith Barney, Inc. 403 F.3d 1050 C.A.9 (Wash.) 2005.

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

In Alaska state courts, the claim need only allege a set of facts regarding a claim consistent with and appropriate to an enforceable cause of action. A cause of action should be deemed sufficient if evidence may be introduced that will sustain a grant of relief to the plaintiff on that claim. Carlson v. Renkes, 2005 WL 1316923 (Alaska 2005); McGrew v. State of Alaska, Department of Health and Social Services, 2005 WL 273124 (Alaska 2005). Statement of claims should be liberally construed. Odom v. Fairbanks Memorial Hospital, P.2d 123 (Alaska 2000); Guerrero v. Alaska Housing Finance Corp., 6 P.3d 250 (Alaska 2000).

## 2. Introductory Comments

The court and Defendants' counsel will likely see this response as significant over-kill since all of the allegations Plaintiff made in his Second Amended Complaint are admitted for purposes of Defendants' opposition, and the causes of action in question are well-pled, thorough, and, if anything, overly pled. The only issue is whether Plaintiff has alleged the bare bones of the essential elements for each claim in question. It does not really matter what facts or allegations by Mr. Wiley Defendants agree are true or not true, since every allegation made by Plaintiff in his Second Amended Complaint is considered admitted as true by Defendants for purposes of their opposition. Defendants' opposition is not the appropriate occasion to argue about what Defendants meant by their statements and their creatively constructed dialog in *The Last Run*, though they noticeably do not explain why they found it necessary for them to use Wiley's actual name, or more likely, why they did not show the slightest concern for the privacy rights of Mr. Wiley, beyond profit motive, cost savings, and enhancing the marketability of their book.

As discovery continues and depositions, presently scheduled for April, are taken, it can then be established whether Defendants intentionally or recklessly constructed false dialog about Wiley for purposes of making their book more marketable; who made false statements and

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

constructed false dialog about many important events regarding Mr. Wiley, and whether

Defendants failed to show the slightest concern for the privacy of Mr. Wiley; and whether any of

the published statements are truthful statements of highly private and personal information.  As

will be discussed later, it is not inconsistent for Mr. Wiley to complain that the statements

contained in *The Last Run* are believed by him and others to be false, yet do disclose to many of

the readers, those who know Phil, private and embarrassing true facts or that a jury may find a

statement is true, though it is highly personal and embarrassing.  Defendants want to show their

statements are true to defend against defamation and false light claims, but do not want to have a

jury consider their liability for making such statements if the facts found true by a jury are highly

embarrassing personal information that meet the elements of wrongful disclosure to the public of

private information.

> Defendants will have to answer for a jury that one important question they cannot possibly

answer:  Why was it necessary to use Wiley's actual name and the actual name of his fishing

vessel when Wiley was not a public figure; when he had nothing to do with the LaConte, and he

was known to Defendant Lewan as a recluse who chose to live a life of solitude, to stay to himself

and that he was a vulnerable person due to a severe head injury that left him 100% disabled.

> The claims in this case, like almost all cases, started with a few specific allegations and

many general allegations.  Investigation and discovery will make it possible to bring more

specificity to the allegations as the case progresses.  At this stage, though, the inquiry is simply if

the allegations are sufficient to state each cause of action upon which relief may be granted,

whether the barest essential elements of each claim have been alleged, not whether they are true.

If the allegations of the barest essential elements are made, the inquiry should end.

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

Defendants' memorandum, however, argues facts, not failure to allege all essential elements of a cause of action.   Those arguments are more appropriate after discovery.

### 3.  Previous Decision on the Same Subject Matter

This court has already ruled on the subject of Defendants' present Opposition to Plaintiff's request to file a Second Amended Complaint which subdivides the general Count II - Invasion of Privacy claim of the complaint sought to be amended, into its four sub-parts.  On September 27, 2005, this court entered an order regarding Defendants' Motion for Reconsideration (Docket No. 19).  In that order, this court states "Phillip Wiley sued (Defendants) for damages for defamation, invasion of privacy, and unjust enrichment.  (Defendants) moved to dismiss all claims.  The court issued an order at Docket No. 16 denying the motion.  The unjust enrichment claim was thereafter dismissed, leaving Plaintiff's defamation and invasion of privacy claims.  Plaintiff's invasion of privacy claim pled all four sub-parts, three of which are again addressed by Defendants.  This pleading will therefore seem somewhat duplicative of Plaintiff's earlier Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted.  (Docket No. 13).  Plaintiff does so to the extent relevant to confirm that this court has already ruled in Plaintiff's favor on the substance of Defendants' present opposition to Plaintiff's request to amend his complaint in order to divide the general Invasion of Privacy claim into its sub-parts.  (Docket No. 16).

In Defendants' earlier pleadings regarding Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Defendants briefed their same opposition to Plaintiff's claims for invasion of privacy torts in its four sub-parts.  (Docket No. 9 and 14).  Defendants argued their opposition to Plaintiff's claim for Intrusion Upon Seclusion (Docket No. 9 at pages 13, 14); Defendants argued their opposition to Plaintiff's claim for Public Disclosure of Private Facts (Docket No. 9 at

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 5 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

page 14); Defendants argued their opposition to Plaintiff's claim regarding Defendants Portraying Plaintiff to the Public in a False Light (Docket No. 9 at pages 15-17); and Defendants argued their opposition to Plaintiff's claim for Misappropriation of Plaintiff's Name (Docket No. 9 at page 17-19). Plaintiff presented his opposition, arguing the basis of each of the four sub-parts of his general claim for invasion of privacy (Docket No. 13) to which Defendant replied (Docket No. 14).

On September 15, 2005, this court entered an Order denying Defendants' motion to dismiss the claims of Plaintiff (Docket No. 16) contained in Plaintiff's Amended Complaint. (Docket No. 7). Those claim which were not dismissed included the claims Defendants now seek to exclude by their objection to Plaintiff's Motion for Leave to File Second Amended Complaint, (Docket No. 42), as well as by Defendants' Motion to Dismiss Plaintiff's Claims for Public Disclosure of Private Facts, Intrusion Upon Seclusion, and Appropriation of Name and Likeness. (Docket No. 43).

In its Order (Docket No. 16), this court referred to Plaintiff's defamation claim and Plaintiff's general inclusive invasion of privacy claims (Docket No. 16 at p. 1). The fact that Judge Singleton did not reference Plaintiff's remaining claim, his claim for unjust enrichment, resulted in Defendants' Motion for Clarification (Docket No. 19) and Order dismissing the unjust enrichment claim (Docket No. 35).

In its Order, Judge Singleton stated as follows:

> Lewan and Harpers argue that Wiley's invasion of privacy claims fail for a number of reasons. Wiley is not a celebrity whose name and endorsement or appearance has been shown to have value that Harpers and Lewan appropriated. Nor do the facts alleged in the complaint suggest a claim for invasion of privacy separate and apart form the defamation claim. *See, e.g., Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1127, 1137-38 (Alaska 1989) [citing Restatement (Second) Torts § 652A-I (1977)]. The Court finds Wiley's argument that a jury could find that the

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

book placed Wiley in a "false light" persuasive. On that ground alone, and without prejudice to a motion for summary judgment after the facts are developed, the Court will deny the motion as to the invasion of privacy claim.

The Court recognized that many cases reflect a willingness to save authors and publishers the cost of trial preparation by more liberally dismissing defamation cases at the motion stage than they would other civil cases. This is largely because expensive litigation could chill or discourage the exercise of First Amendment rights. Here, however, it appears that Wiley's true name and the identification of his vessel were ancillary to the story that Lewan wished to tell. It is not clear that using a pseudonym for Wiley and for Wiley's vessel would have detracted from Lewan's book. A fuller development of the facts will enable the Court to evaluate Lewan and Harper's arguments in context.

This court did not previously rule that Wiley only stated a claim for invasion of privacy with respect to false light, though the confusion is understandable, and some discovery has occurred, all of which strengthens Plaintiff's invasion of privacy claims. The court did make a specific reference to that portion of Count II Invasion of Privacy, but it did not dismiss any parts of the claim. The court did comment on the fact that Mr. Wiley was only an ancillary character in *The Last Run* and that there appeared to be no reason why Defendants chose to use Plaintiff's actual name and that of his vessel in *The Last Run* since the events involved in *The Last Run* had nothing to do with Mr. Wiley or his vessel. To the extent the order was not clear, Mr. Wiley sets forth his reasons in support of the claims, particularly in light of recent discovery. Again, one significant point to remember while considering Defendants' opposition is that all allegations by Plaintiff are deemed true purposes of deciding whether a claim has been sufficiently pled. The "fuller development of the facts" has only begun through the discovery process, but the discovery which has occurred uniformly strengthens Plaintiff's claims of invasion of privacy and defamation.

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

### 4. Reason for Second Amendment of Complaint

Prior to any further pleadings, except for those involved in Defendants removing the case from state court to federal court, (Docket Nos. 1 and 3), Plaintiff amended his complaint to include claims for Defamation as Count I; Invasion of Privacy in its general form encompassing its four sub-parts as Count II; and Unjust Enrichment as Count III. (Docket No. 7). Defendants' Motion to Dismiss (Docket No. 9) made the same arguments it now makes to this court in its opposition to Plaintiff's present motion to allow amendment of pleadings. Defendants' motion was denied. (Docket No. 16). That order denying Defendants' motion was later clarified such that Count III regarding unjust enrichment was removed. (Docket No.35).

Defendants thereafter made comments suggesting that they did not believe this court had ruled such that Count II, the Invasion of Privacy claim, had been fully ruled upon, or perhaps more accurately, that such claims, except false light and defamation, remained. In the interests of clarity, and to avoid any future arguments, Plaintiff therefore filed the present motion for leave to file a Second Amended Complaint at this early stage before depositions occur. The Second Amended Complaint also up-dated the name of Defendant HarperCollins from the corporate name it used in *The Last Run* to its now legal name. It subdivided Count II Invasion of Privacy claim into its descrete sub-parts, and deleted Count III Unjust Enrichment. It also provided specificity to the objectionable contents of *The Last Run*.

The passage of time since this court ruled upon Plaintiff's Count II general Invasion of Privacy claims has permitted initial discovery from Defendant Todd Lewan. A portion of the requested and relevant meaningful discovery has also been received from Defendant HarperCollins. The discovery thus far only confirms Plaintiff's fears that *The Last Run* is far from being the "absolutely true book (wherein) nothing beyond what was verifiable and documentable

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 8 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

has been added," as Defendants advertised, (*The Last Run*, Author's Note page). *The Last Run*

may very well be factual with regard to the events on board the LaConte and with regard to the

circumstances of the rescue.  It is, however, a work of creation with regard to Mr. Wiley.  Mr.

Lewan created the story of the fishermen involved in the subject of *The Last Run* in their relation

to Mr. Wiley, a person who had nothing to do with the LaConte, its sinking, or the rescue of the

people on the La Conte.

### 5. Defendant's Statements of Accuracy and Falsity of Such Representations

Defendants make the following representations to the public and readers of their

publication of *The Last Run*, regarding their own statements (as opposed to dialog attributed to

others), as well as the dialog Defendants constructed or indicate occurred between two of the main

characters of *The Last Run*, Mike DeCapua and Bob Doyle, regarding Phil Wiley:

> This is a work of nonfiction – unlike a novel, none of the characters, situations and
> places described in this book is imaginary.  Dialogue was reconstructed as carefully
> and completely as possible, using official  reports, court papers, personal letters,
> diaries and audiotapes, and by cross-checking the recollections of people who took
> part in the conversations.
>
> For clarity, consistency and tempo, a number of less significant places, people,
> observations and impressions have been left out.  However, the author has
> attempted to write an absolutely true book; nothing beyond what was verifiable and
> documentable has been added.  *The Last Run*, author's Note, pages xi.

Despite the author's stated credentials as an Associated Press correspondent, and despite

the statements by Defendants that *The Last Run* is a work of nonfiction, "an absolutely true book

[wherein] nothing beyond what was verifiable and documentable has been added," Defendant

publisher HarperCollins and Defendant Todd Lewan actually presented a work of creative

nonfiction, a popular and trendy genre that embellishes true stories with invented scenes, created

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 9 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

dialogue, refined wordplay, innovative descriptions and other techniques usually employed by fiction writers, all in an effort to increase the marketability of the book by enhancing the storyline.

Creative Nonfiction, also known by such other names as: Narrative Nonfiction; Literary Journalism; New Journalism; the Literature of Reality; the Art of Truth; Gonzo Journalism; and Neo-gonzo Journalism – is the latest name for fact-based writing that is the union of storytelling and journalism. It combines reportage with narrative telling, fictional and poetic techniques, and portraiture and self-refection. (*Exhibit A, page 12).

Objective reporting and true nonfiction is bound by the rigors of fact; it creates an expectation of accuracy, objectivity, clarity and simplicity. Creative Nonfiction allows a writer to employ the diligence of a reporter, the shifting voices and viewpoints of a novelist, and the analytical modes of the essayist. (Exhibit A, page 13).

Despite the author's claim that *The Last Run is "an absolutely true book"* and that "dialogue was reconstructed as carefully and completely as possible using official reports, court papers, personal letters, diaries and audiotapes, and by cross-checking the recollections of people who took part in the conversations," Defendant publisher HarperCollins and Defendant author Todd Lewan actually ascribed dialogue to key characters that differs diametrically from the recalled memories of those characters according to recorded interviews conducted post-publication by Plaintiff's investigator. (Exhibit A, page 13-15).

Defendants were actually quite inventive in their opposition and motion to dismiss in their efforts to show some relationship, however tenuous, between the subject of *The Last Run*, the La Conte sinking and the rescue of its crew, with Mr. Wiley and his vessel. Defendants

**C. MICHAEL HOUGH**
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

**\*Exhibit A is used for the purposes of this reply, to summarize and explain the allegations of Plaintiff and discovery and investigation, not for purposes of proving a fact or opinion, but what Plaintiff intends to prove and that a good faith basis exists for doing so.**

discuss the "fact" that Doyle and DeCapua were not making money with Wiley and therefore went

to work on the La Conte. Unfortunately, even that angle is completely specious, the result of

admirable creativity, but certainly not factual as explained below, just as inventive, false, and

lacking any basis as the creativity of Lewan with regard to Wiley, done for the same purpose as

what was done to Wiley – spice up the story, make it more interesting, not just another "unsafe

boat sinks while fishing in Alaska, crew dies, other crew rescued" book, make it like *The Perfect*

*Storm*, which had been published only six months after the LaConte sank.

   The basic storyline of *"The Last Run*, a True Story of Rescue and Redemption on the

Alaska Seas" as advertised by Defendants, was unquestionably false and an excellent example of

the skills of Defendant Lewan as a creative storyteller, though it reflects horribly on Defendants'

representations of accuracy and truthfulness.

   (Defendants) Book Description

   It was the **catch of a lifetime**. In late January 1998, after a miserable stretch of
   fishing that hadn't paid for even their groceries, the five-man crew of a seventy-
   nine-year-old schooner called the La Conte risked one last run to the Fairweather
   Grounds, despite the approach of bad weather. The young skipper, a father-to-be,
   was convinced fish could be found on the shoals, and his instincts were right: **they
   hit the mother lode**. For eighteen hours their lines had a fish on every hook:
   yellow eye, lingcod, calico, halibut, even the occasional sand shark; it was an
   **incredible haul**, one that would bring **huge profits – and respect** – back in port.

   But they stayed out too long, and a hurricane-force Arctic storm caught them.
   Though in need of repair herself, the La Conte had weathered bad seas before – and
   might have again. But in the cruelest of ironies, the additional burden of its
   **magnificent catch** sank the ship, and set the five men – Bob Doyle, Mike
   DeCapua, Gig Mork, David Hanlon, and Mark Morley – afloat in frigid seventy-
   foot seas. Their radio beacon was sending distress signals to the Coast Guard, but
   the chances of rescue under such conditions seemed remote … .

   Lewan became obsessed with learning what had become of the other crewmen;
   with understanding how five "end of the roaders" from different parts of the United

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                        Page 11 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

States had come together in Alaska to fish one of the world's most treacherous patches of ocean in the dead of winter; and with conveying the way in which that **"dream catch"** represented an opportunity for each of the men to **significantly alter his life** ... . (Book Jacket of *The Last Run*).

There was no possibility of a "catch of a lifetime"; the La Conte crew did not "hit the mother load"; and it was not an "incredible haul, one that would bring huge profits – and respect – back in port." Defendants knew so because the surviving crew told them so, as shown by the discovery from Defendants, as well as common sense, or talking to almost anyone familiar with commercial fishing, indicated that the crew of the La Conte would barely break even on the trips referred to by Defendants in *The Last Run* and at most the crew would get a crew share of $300.00, if they filled, or "plugged," the La Conte with fish, any kind of fish it was legal for them to catch on the trip. As DeCapua explained to Lewan, there were 7 totes with ice for their catch; a tote holds no more than 1,000 pounds; the highest value fish the LaConte could catch and sell was no more than $2.50 a pound. After food, fuel and bait, the crew would get very little, and that is if capacity was filled. (Exhibit B). The truth, as Defendants knew from their interview with DeCapua, was that the crew wanted a steady job later in the year on the La Conte for tendering crab and salmon, for which they might be really lucky and actually get a steady, princely sum of $100.00 day. (Exhibit B).

Defendants knew Doyle and DeCapua did not stop working for Wiley for any of the reasons Defendants created; they wanted the chance for a steady job. Defendants knew the truth, but the truth lacks the "sexiness" of a "catch of a lifetime", an "incredible haul", a "chance to get rich", by "end-of-the-road losers" out for "one last run", "one last chance at redemption" of their defects and demons, "to get respect back in port". (Exhibit B).

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

Defendants weaved their highly marketable, but untrue, story through two main characters in *The Last Run*, Mike DeCapua and Bob Doyle.  Mr. Lewan created his story from comments made about other fishermen , other events, and a variety of historical events in the isolated contacts between Wiley and DeCapua, all of which occurred eight to ten years prior to the time when Mr. Lewan indicates in *The Last Run* that the events occurred.  Everything Defendants state about Wiley and his vessel in *The Last Run* is horribly negative and the statements by Defendants and the subjects regarding Mr. Wiley in the dialog created by Defendants are portrayed as though those events, almost entirely created from the smallest crumb of a marginally and historically true fact regarding Wiley or a fact regarding someone else or a different fishing boat such as the LaConte, occurred just before the events of the La Conte.

The passage of time since this case was filed has allowed statements to be taken from Mike DeCapua and from Bob Doyle, both of whom clearly and almost completely dispute the comments, dialog, and statements Defendants attribute to them.  Defendant Todd Lewan, who did provide discovery production in good faith, has provided his notes, transcripts of his interviews, and the documentary basis, if any, he has for the statements Defendants made themselves about Wiley, as well as the basis for the dialog they created for DeCapua and Doyle to discuss Wiley in disparaging ways.  Their depositions will soon be taken under oath, as opposed to their recorded and transcribed statements.  (Exhibit A, page 14,15).

### 6.  Summary of Dialog and Statements By Defendants

The claims regarding the wrongful statements, inferences and representations Defendants created regarding Mr. Wiley and his vessel Min E are not limited to the dialog Defendants constructed between two men who survived the sinking of the LaConte, Doyle and DeCapua.  There are also false and extremely harmful and embarrassing direct statements made by

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 13 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

Defendants as opposed to dialog, all in a book Defendants state is absolutely true and indicate that

nothing has been made up or not thoroughly researched. (*The Last Run*, page 47).

In *The Last Run*, Defendants indicate that Mike DeCapua characterized Phillip Wiley as a

"cocksucker," a man with a "crush" on Bob Doyle, a "fucking bastard", a "lazy prick," who

decided never "to bust his ass," as a skipper who works his crew "just enough to get a small catch

to cover some expenses… with never enough left over for me to get a good paycheck," and as a

skipper who illegally sailed on "January 15 … worked the lower half of the Chatham Strait and

returned to Sitka with one thousand pounds of black cod", a fact which, if true, was illegal,

subjecting Plaintiff to forfeiture of his vessel, fines totaling hundreds of thousands of dollars,

forfeiture of his fishing rights and permits to fish in Alaska and Federal waters. (Exhibit A, page

13, which provides references to pages within *The Last Run* where the characterizations by

Defendants of Wiley are found). As virtually anyone living in Southeast Alaska, on the Kenai

Peninsula, Kodiak or other fishing communities knows, had Mr. Wiley really fished for black cod

as Defendants state, Defendant was doing so two months before and two months after any possible

legal opening for that fishery, anywhere in Alaska waters and anywhere in any Federal waters off

Alaska (as well as any other Federal waters or Canadian Federal waters). The extent to which

Defendants portrayed Phillip Wiley was gratuitous and unnecessary to the story line of *The Last

Run*, and in doing so, as well as in other respects, it also departed from the reporting practices of

another author's recounting of the same event. (Exhibit A, page 17).

Defendants' invasion of the privacy, solitude and seclusion of Mr. Wiley, his right to "just

be left alone" regarding the details of his life and lifestyle, is not simply limited to Defendants

referring to Mr. Wiley as a "cocksucker", as Defendants have argued, (or "bastard", "fucking

prick," or "fucking bastard" which are among the other references and characterizations of

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                 Page 14 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

Plaintiff by Defendants in *The Last Run* on those occasions when his actual name is not used),

whether the term is used in the context of Mr. Wiley being an entirely repugnant person with

regard to his business and financial activities, honesty, reputation, the safety of his vessel and

other subjects, or in the context of performing fellacio with a crewmember, Bob Doyle.

> Cocksucker: n 1:  a person who performs fellatio 2: insulting terms of address for
> people who are stupid or irritating or ridiculous [syn: asshole, bastard, dickhead,
> shit, mother fucker, prick, whoreson, son of a bitch, SOB]. <u>The American Heritage
> Dictionary of the English Language</u>, Fourth Edition, copyright 2000 by Houghton
> Mifflin Company.

Defendants did not simply call Wiley a cocksucker as a vulgar term and that ended it.

Instead, they did so in the context of his business competency, safety, financial, and reputation for

honesty in business interests since, according to Defendants, they did not intend to mean the

sexual connotation.  Defendants mentioned Wiley at least 32 times in *The Last Run*, almost every

reference being a reference to his terrible reputation, incompetence, illegal fishing practices,

refusal to make safety repairs, lack of integrity, lack of abilities as a skipper, and other personal

attacks on Wiley.  (Exhibit A, page 16).

With regard to Defendants' focus in their pleadings in this case on their use of the word

"cocksucker" to define Mr. Wiley, as well as bastard, fucking bastard, and other characterizations,

there is no harmless meaning of the word cocksucker when applied to Mr. Wiley in the context it

was used and when read in the context of the entire book.  As discussed later, Defendants' use the

term of cocksucker to describe Mr. Wiley in his business endeavors, is by far the most serious

damaging and legally significant use of the word by Defendants, but even its use in a sexual

context becomes actionable because Defendants do have a quite unusual focus on homosexuality

in the dialog of the book.

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

What a publication actually says or carries to its readers must be judged by the publication as a whole. <u>Gustin v. Evening Press Co.</u>, 172 Mich. 311, 137 N.W. 674, or by juxtaposition with other articles or photographs. <u>Zbyszko v. New York American</u>, 228 Ap.Div. 277, 239 N.Y.S. 411. The jury has the right to read this publication with an eye upon the question of what ideas Defendants calculated to bring to the average reader, and a jury could well believe that the publication charged Mr. Wiley with personal dishonesty, ineptitude, dishonesty, incompetence as a commercial fisherman, corruption and moral turpitude, as well as performing a sexual act on his employee. <u>Empire Printing Company v. Roden</u>, 247 F.2d 8, 17 Alaska 209 (9th Cir. 1957).

If he did so with his employee, that would be a crime.

> Where the words impute a serious crime to the plaintiff, recovery is permitted without proof of special damages. *See* <u>Alaska State bank</u>, 674 P.2d at 295 (providing that "where 'the words spoken by the defendant were such as to ... impute a crime to plaintiff ...' recovery is permitted without proof of special damages," and citing <u>Cinquanta v. Burdett</u>, 154 Colo. 37, 388 P.2d 779, 780 (1963) [en banc]). *See also* Restatement (Second) of Torts § 571 (1977). One who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, ... would be (a) punishable by imprisonment ... or (b) regarded by public opinion as involving moral turpitude.).

Defendants, however, did not just define Mr. Wiley as a cocksucker in the vulgar way one person sometimes calls another person or object an epithet. Instead, demeaning, wrongful references to Mr. Wiley and his vessel, Min E, are found throughout *The Last Run*, invading Mr. Wiley's rights to seclusion, privacy, and intruding into his freedom from being portrayed to the public in a false light regarding his business interests, finances, honesty, and reputation, or if true in whole or in part, by making public, those private but true facts, as well as from Defendants' use of his name and life experiences, apparently as a touchstone to enhance the profitability of its book. (Pages 45, 46, 47, 48, 49, 51, 63, 83, 132, 149, 354 of *The Last Run*). Now is not the time

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

to determine whether Mr. Wiley has had his privacy invaded, but rather decide whether he has alleged the essential elements for each of the three remaining invasion of privacy sub-parts, false light not being included.

Mr. Wiley alleges that *The Last Run* contains numerous other false statements regarding the reputation for the seaworthiness, insurability and safety of his fishing vessel and Plaintiff's commercial fishing practices, (paragraph 31), and contains numerous other false statements regarding his reputation for operating a safe vessel and Plaintiff's commercial fishing activities.

In paragraph 33 of Plaintiff's Second Amended Complaint, Mr. Wiley alleges that Defendants, by writing, publishing, marketing and distributing *The Last Run*, and in other ways, state unequivocally, negligently and/or recklessly false that Plaintiff Phillip Wiley was sent a marine architect report and a letter from his insurance company indicating that if a list of seriously dangerous and unseaworthy conditions of his commercial fishing vessel alleged to have been stated by Mike DeCapua to Plaintiff Phillip Wiley's insurance agent were not repaired and corrected, Plaintiff's fishing vessel would no longer be insured, such statement being false and made negligently and/or recklessly. It appears Defendants agree such statement was false. Now that some discovery from Defendants has occurred, it is clear that Defendants knowingly or recklessly stated, not in dialog but in Defendants' own statement of fact, that:

> Three days later, a marine architect showed up to inspect the Min E. He took some notes, made out a report and sent a letter to Phil Wiley not long after. It said that unless repairs were affected, the boat would no longer be insured. (*The Last Run*, p. 47).

First, it never happened (Affidavit of Plaintiff), but more importantly, Defendants knew it never happened and they simply created the statement. (Exhibit B, Statements by DeCapua and Doyle).

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE                                    Page 17 of 44
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

In an interview of Mike DeCapua, he stated the following regarding *The Last Run* in general:

> A lot of the dialogue in that book is stretched.  The physical locations are absurd. … and he's got us hangin' out in a bar that don't exist.  It's like *Star Wars* for crying out loud.

> That's entirely the author's conception of a conversation.  That's not the way the conversation went down.

And with regard to Phillip Wiley, Mike DeCapua made the following declarations:

> Heck, I love Phil.  He's a great guy … I never had a single complaint about Phil's calculations …  He was always very thorough with the pay … I kept fishing with him for years.  So, you know, that should tell you, you know, how the pay thing went.

> As far as safety, you know, or anything to do with being a skipper, Phil is topnotch … He's a producer too.  Look at his tickets.  You know, he's got a history behind him, fish tickets like crazy.

> He's a proficient and effective fisherman.  Look at his catch history.  I made a lot of money with Phil.

Regarding fishing for black cod in Chatham Strait on January 15:

> No way.  Absolute falsehood.  That is very illegal.  Phil would never do that, I would never do that.  The cold storage would never buy those fish.  I mean, you're accusing the person that bought those fish of buying illegally caught black cod as well.  This – black cod in state waters is a valued resource.  The State of Alaska does not take that shit lightly, you know.  You lose your ability to participate in any fishery when you fuck around with that kind of stuff, you know.  Nobody does that.

Regarding the statement in the book "This is how the Min E could have produced if Phil had ever decided to bust his ass … That lazy prick."

> No, no, never happened.  Phil is not lazy.  (Exhibit A, page 14, But far more important, DeCapua told Lewan so.  Exhibit B, Defendant Lewan took a comment that Plaintiff should "get off his ass" as far as going out on trips such as that of the LaConte, not that he was a "lazy prick".).

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 18 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

In an interview held by the Plaintiff's investigator, Glen Cutting, on October 30, 2005, Bob Doyle made the following declarations regarding the book in general:

> [Where would the author get this from?]  From his fucking foolish imagination. Fuck no.  There ain't a soul at that house would agree to his bullshit.

> [So that's another case of the author taking …]  Extreme liberties.  That's all a figment of his imagination.  I feel fucking used … half-truths.

> Regarding Mike DeCapua's comments in the book that "Phil's got a crush on you" and "licking the skipper's ass so much Doyle must like the taste."

> No.  [DeCapua didn't say that]  Not that I recall.

> No.  [That was never said?  If it was printed it was untrue?]  Yeah.  Not true.  And of course the crush thing, that's horseshit.

> Regarding other comments in the book regarding Phillip Wiley.

> This is portraying Mike DeCapua and Phil as being adversaries.  I didn't see that. Phil was a businessman and Mike was an asset.  (Exhibit A, page 15).

## 7. Comparison to Spike Walker

Defendant publisher HarperCollins and Defendant author Todd Lewan demonstrated extreme departure from the standards of reporting adhered to by another publisher's and author's recounting of essentially the same event.

In *Coming Back Alive: The True Story of the Most Harrowing Search and Rescue Mission Every Attempted on Alaska's High Seas*, publisher St. Martin's Griffin and author Spike Walker wrote what they called a "true account of the La Conte's final voyage and the relationship between Alaskan fishermen and the search and rescue crews who risk[ed] their lives to save them." According to the blurb on the cover, the book was 'meticulously researched through hundreds of hours or taped interviews with the survivors'.  Similarly, Defendant publisher HarperCollins and Defendant author Todd Lewan reported that their book, *The Last Run: A True Story of Rescue and*

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

*Redemption on the Alaska Seas* took four years for researching and writing, and that official

reports, court papers, personal letters, diaries and audiotapes were the sources for the facts

reported. (Exhibit A, page 17).

  In both books, Bob Doyle and Mike DeCapua were featured as central characters.  Though

Todd Lewan noted that "for clarity, consistency and tempo, a number of less significant places,

people, observations and impressions have been left out", he nevertheless chose to report – even

emphasize – Phillip Wiley's role in the back story. Spike Walker made a diametrically different

choice.  While Todd Lewan's book contained 32 mentions of some version of the name "Phillip

Wiley" which accounted for 21 passages containing some 1, 177 words sprinkled throughout the

book – Spike Walker's book never mentioned Phillip Wiley's name at all.  To refer to

Doyle/DeCapua's former employers, Spike Walker used the following neutral and unrevealing

language which may or may not refer to the Min E:

> Doyle soon found a job fishing for shrimp on board the F/V Quicksilver, working
> for Eric Calvin out of Tenakee Springs … <u>When those seasons expired, he found
> work aboard another, less successful fishing boat, a vessel that shall remain
> nameless.</u>  (Emphasis added).

> As is the custom on fishing boats, the first thing the next morning, <u>Doyle and
> DeCapua gathered their belongings, stuffed them into their navy bags, and moved
> off their respective boats and former places of employment.</u>  (Emphasis added).

## 8. Invasion of Privacy

  This is not the typical defamation/invasion of privacy case.  Defendants have acted with

extreme callousness in using the name of Plaintiff and his vessel in *The Last Run*  for absolutely

no reason except utter disregard for the privacy of Mr. Wiley.  Defendant publisher HarperCollins

and Defendant author Todd Lewan used the persona of Phillip Wiley as touchstones and constants

throughout the book; their use of Phillip Wiley for repeated references throughout the book was

**C. MICHAEL HOUGH**
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION     Page 20 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

gratuitous and unnecessary to the book's story line; was the product of the author/publisher's editorial creativity which reflected unbridled use of imagination, and literary license—such repeated references were exploitive of Plaintiff Phillip Wiley at the same time as they engendered misrepresentation and fabrication of critical information about him.

Todd Lewan's book, *The Last Run*, contained 32 mentions of some version of the name "Phillip Wiley" or that of his boat (i.e., "Min E," "Phil Wiley," "Wiley," "Phil," or "Mr. Wiley."). There were at least 21 passages throughout the book using one or more of the above-named identifications markers.  the first passage to mention Phillip Wiley was on page 45; the last such passage was on page 354.  *The Last Run* Defendant publisher HarperCollins and Defendant Todd Lewan have blatantly invaded the privacy rights of Plaintiff Phillip Wiley in terms of his personal and business persona, including such aspects as:  character, integrity, actions, effect of his actions, ability as a skipper, relationship with his crew, sexual orientation, reputation, soundness of his boat, and criminality.  This blatant invasion of privacy was projected through statement, inference and innuendo and with information that was couched to give the appearance of having been extensively researched and supported, and of having a verifiable basis in both disclosed and undisclosed facts.  Said invasion of privacy represented an extensive and pervasive attack on the Plaintiff and would have been so understood by the average reader.  (Exhibit A, pages 9-13).

Among the items of published information by which Defendants HarperCollins and Todd Lewan stated false information of a highly offensive nature, and alternatively disclosed private but true facts, and intruded upon Mr. Wiley's seclusion are the following:

1. That Phillip Wiley is hard-hearted, mean, exploitive, lazy, reckless about the safety of his crew, and is otherwise a contemptible, detestable and self-serving man.

2. That Phillip Wiley was dishonest; that he routinely kept back money he owed.

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

Page 21 of 44

3.  That Phillip Wiley was not an able, beloved, or successful fisherman; that he routinely subjected his men to a meager catch and dangerous conditions; that he regularly demonstrated his incompetence and ineffectiveness.

4.  That Phillip Wiley's relationship with his crew was uncaring and cruel; that he was reckless about the safety of his crew; that regularly and purposefully he would saddle his crew with unsatisfying and needless busy work; and that he routinely refused to pay crewmembers the money owed for work performed with respect to true catch numbers.

5.  That he would routinely hold back the retro pay of deckhands; that he reveled with crewmen groveled or otherwise acted with fear and in a servile way; that Phillip Wiley fished for Black cod on January 15, a date outside of the permissible season for Black cod fishing.

6.  That Phillip Wiley's management decisions and obvious incompetence caused his crew to be cranky and in an increasingly evil mood; that his work schedule and inherent laziness were such as to never allow enough money left over for the netting of a good paycheck by his crew.

7.  That Phillip Wiley had a romantic attraction for crewman Bob Doyle; that Wiley may have been a practicing homosexual; and that he may have had a private sexual escapade with Bob Doyle.

8.  That Skipper Phillip Wiley and his boat, the Min E, were relatively unknown; that Phillip Wiley was recognized as a high risk by the insurer of his boat.

9.  That Phillip Wiley's boat, the Min E, was unsafe; that he was advised by the insurance company that unless repairs were affected, the boat would no longer be insured; and that it was only because of a deckhand's whistle blowing in conjunction with coercion from the insurance company, that Wiley made the numerous much-needed repairs to his boat.  (Exhibit A, pages 9-13).

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 22 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)