Defendants weave a good story in their motion and memorandum, but this motion is not the appropriate motion to argue about what Defendants meant by their statements and creatively constructed dialog, though they do not explain why they found it helpful to them to use Wiley's actual name, or more likely, why they did not show the slightest concern for the privacy rights of Mr. Wiley.

### 9. General Allegations

Defendants' Opposition is based on failure to state a claim upon which relief may be granted. Therefore, it is important to note that the general allegations as applicable to and incorporated within all claims, including the allegations regarding defamation which are applicable to and incorporated within the intrusion upon seclusion and wrongful use of Plaintiff's name for Defendants' financial benefit. In order to avoid unnecessary length, reference to, and discussion of, the general allegations necessary to state each claim are abbreviated.

Defendants were or should have been aware of the seriousness and harm to Mr. Wiley when the allegations referred to above were presented to the public as "absolutely" true, "completely" accurate, verifiable, and thoroughly researched and documented, and representing to the public that nothing is in *The Last Run* is imaginary, reconstructed or made up by Defendants.

Wiley states in paragraphs 61, 62 and 63, duties, breach of duties, and harm.

## II. Invasion of Privacy Claims In General

The right of privacy may be loosely defined as the right of a person to be let alone. Samuel D. Warren and Louis D. Brandeis first espoused a right of privacy in 1890. See Warren & Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890). The Georgia Supreme Court was the first court to recognize a right of privacy in Pavesich v. New England Life Ins., Co., 50 S.E. 68 (Ga. 1905). In Alaska, invasion of privacy has four distinct sub-parts or causes of action:

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 23 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

1. Intrusion into seclusion or solitude or into private affairs;

2. Public disclosure of embarrassing facts;

3. Appropriations, for commercial advantage, of a person's name or likeness.

4. Publicity that places a person in a false light in the public eye.  Wal-Mart v. Steward, 990 P.2d 626 (Alaska 1999).

Alaska appears to have adopted the position of Prosser on Torts, which was later stated in

Restatement of Torts, Second:  Luedtke v Nabors Alaska Drilling, Inc., 768 P 2d 1123 (Alaska,

1989): Chizmar v Mackie, 896 P 2d 196 (Alaska, 1989):

> In his immensely influential 1960 law review article, William Prosser divided the tort of invasion of privacy into four separate and discrete categories:  (1) intrusion; (2) disclosure; (3) false light; and (4) appropriation. …  Prosser's four-part division of privacy rights was adopted in the Second Restatement of Torts and has been accepted by nearly all courts in the United States.  Rights of Publicity and Privacy, §1.19; see also J. D. Lee and Barry A. Lindahal, *Modern Tort Law*, Vol 4, §48.01.

*Restatement (Second) of Torts*, §652A provides, as a general statement of the forms of

invasion of privacy, as follows:

> (1)  One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

> (2)  The right of privacy is invaded by

>> (a)  unreasonable intrusion upon the seclusion of another, as stated in §652B; or

>> (b)  appropriation of the other's name or likeness, as stated in §652C; or

>> (c)  unreasonable publicity given to the other's private life, as stated in §652D; or

>> (d)  publicity that unreasonably places the other in a false light before the public, as stated in §652E.

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

*Restatement (Second) of Torts*, §652H indicates the elements of damage which are recoverable in privacy actions:

> Damages:
>
> One who has established a cause of action for invasion of his privacy is entitled to recover damages for
>
> > (a)  the harm to his interest in privacy resulting from the invasion;
> >
> > (b)  his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and
> >
> > (c)  special damage of which the invasion is a legal cause.

Mr. Wiley has sufficiently pled his invasion of privacy claims to encompass the essential elements of all four sub-categories of an invasion of privacy claim.  Certainly come of the subcategories are more applicable to the invasion of Mr. Wiley's privacy by Defendants in this case, but the essential elements for each subcategory of an invasion of privacy claim are alleged, and for purposes of Defendants' opposition, the allegations are deemed true.

In the Second Amended Complaint, amendments were made to address specific objections Defendants had to Plaintiff's first amended complaint, such as providing more specificity of the wrongful statements by Defendants, such a paragraphs 28(a) to 28(d); 29(a) to 29(l), 34(a), in which the specific objectionable contents of *The Last Run* are set forth.  In the Second Amended Complaint, Plaintiff also provided more specificity of the ways in which the wrongful statements by Defendants portrayed Plaintiff, such as paragraph 66(a) with its 10 categories of wrongful characterizations of Plaintiff by Defendants in *The Last Run*.

The Second Amended Complaint additionally addresses the fact that Defendants distributed the paperback version of *The Last Run* in July of 2005, after Defendants were sent a letter by Plaintiff objecting to the characterization of Plaintiff and use of his name in *The Last*

**C. MICHAEL HOUGH**
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

*Run*, and even after Defendants were served with the complaint in this case and knew of its wrongful statements regarding Plaintiff.  [Paragraphs 69(a) and 69(b)].

The claim for invasion of privacy by portraying Plaintiff to the public in false light were also alleged, incorporating all of the claim for defamation since falsity of the statements is also an essential element of the claim, though Plaintiff did make the false light claims more specific.  [Paragraphs 75(a), 76(a) to 76(e)].  Defendants do not seek to have this claim dismissed or to prevent Plaintiff from amending his complaint with regard to the false light claims.

### A.  Invasion of Privacy by Appropriation of Name

The basic elements of a misappropriation claim include:

1.  Appropriating a person's name or likeness for the value associated with it;

2.  Identifying the plaintiff;

3.  Reaping a benefit from the association.

The second amendment sets forth the essential elements of invasion of privacy by appropriation of Plaintiff's name and that of his vessel.  This claim is not dependent upon falsity or truthfulness of the allegations.  What is true is that Defendants defamed Plaintiff and invaded his privacy to obtain financial gain.  Defendants defend themselves to this claim and to Plaintiff's other claims by arguing that Plaintiff was a public, not private, person, though the court earlier disagreed and found that Plaintiff was a private person.  If Defendants are correct, that Plaintiff was a public person, it is liable for appropriating his name and that of this vessel for its financial benefit based on the allegations made by Plaintiff and deemed true for purposes of Defendants' motion.

By using Plaintiff's name and that of his vessel, telling the public that every word Defendants said about Plaintiff was true, Defendants were able to use Plaintiff's former good

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE

Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

name and reputation, despoil it, and compare Plaintiff and his vessel by inferences to the La Conte. Defendants were able to use Plaintiff's name to obtain financial advantage. Again, at this stage of the case, and for this motion, the issue is simply whether sufficient allegations were made. The truth of the allegations is assumed for such purposes.

Defendants persisted in having Mr. Wiley as a continuing character in their book about the La Conte, a non-fiction book about an unsafe boat, not properly equipped with needed safety equipment or reliable bilge pumps or engines fishing when and where no other similar boats would have fished, in a notoriously dangerous area, at a time for notoriously dangerous weather.

Defendants have used Wiley's name and his boat Min E to discuss the La Conte and its actions. Defendants are in a much better position to explain why they decided it was necessary or convenient and particularly profitable or cost-saving for them to use Wiley's actual name and vessel name. There surely must be a significant reason for Defendants to do so. Depositions will reveal that profit motive.

Defendant cannot possibly argue or represent to this court that Mr. Wiley does not figure prominently, frequently and throughout *The Last Run*. Other than the two characters Defendants use to tell their story by dialog that Defendants created, or perhaps recreated to give Defendants the benefit of the doubt, for Bob Doyle and Mike DeCapua, as well as through statements Defendants themselves make (as opposed to dialog they created or recreated), Mr. Wiley is likely the most repetitively named (or identified by his vessel, Min E) character in *The Last Run*.

He is a common theme, a touchstone for Defendants to tell their story. Mr. Wiley is a common theme throughout the book. Defendants cannot in good faith state otherwise. In any event, the matters before the court is whether Mr. Wiley has stated the essential elements for each claim. The truthfulness of his allegations are deemed correct for purposes of the motion.

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                              Page 27 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

Defendants released and distributed the paperback copy of *The Last Run*, doing so after Wiley's complaints to Defendants were expressed to Defendants, apparently computing that it is significantly more cost-effective to harm Wiley, invade Wiley's seclusion and privacy, present Wiley to the public, his friends, and business contacts as dishonest, incompetent, unsafe skipper with an unsafe and uninsurable vessel Min E, than to forgo the significant corporate net profits Defendants will now realize using Wiley's name and the name of his vessel.

According to Defendant Lewan, he wrote this story for The Associated Press. "The news cooperative, as far as anyone knew, had never run a serial on the news wire in the AP's 150 year history." page viii of *The Last Run*, but it did do so for this story, one about "the fishermen and Coast Guardsmen who survived the events of January 30, 1998 ..." page vii of *The Last Run*. Defendant Lewan could have told the story quite capably and just as profitably without using Wiley's name or  the name of his boat, or providing any other description identifying him or his vessel.

Phil Wiley, however, fulfills Defendants' thematic need for a bad guy, the skipper in a black hat, the ogre, the bad guy, the cheat, the incompetent and unsafe skipper who has an unsafe vessel, cheats his crew, and just like Scrooge in a Christmas Carol, Wiley won't even let his crew have Christmas Day.  You can almost hear one of his crew's little boys hobbling down to the dock on his crutch, asking Wiley "Won't you please let Daddy have a few moments off for Christmas pudding, Sir?"  Wiley is so bad of a character, even without Defendants' recurring under-current of homosexual references about the relationship between Bob Doyle and Wiley, that Defendants call Wiley a cocksucker.

Mr. Wiley incorporated the following allegations into his invasion of privacy claims in his Second Amended Complaint:

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 28 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

1. Mr. Wiley is a private citizen, not a public figure. (Paragraph 3). Defendants disagree and argue that Mr. Wiley is a public figure.

2. Mr. Wiley is a commercial fisherman and has been for most of his life. (Paragraph 4).

3. *The Last Run* is represented by Defendants to be a non-fiction book about the sinking of the La Conte. (Paragraphs 7, 21 to 27).

4. Mr. Wiley has never had any connection or involvement with the La Conte, its owners, its skippers (paragraph 9) or any of the events in any way regarding the sinking of the La Conte. (Paragraph 10).

5. The allegations, statements, dialog, inferences and suggestions contained in *The Last Run* were and will be published to the public including Mr. Wiley's business contacts and personal contacts. (Paragraph 11).

6. Mr. Wiley is entitled to freedom from the statements by Defendants. (Paragraphs 12 to 19).

7. Defendants owed duties to Mr. Wiley for their wrongful, negligent and reckless acts. (Paragraph 20).

8. Defendants made false statements regarding Plaintiff, as well as made false statements about Mr. Wiley on personal matters, as well as business, occupation and related matters (paragraph 28), numerous other false and libelous statements regarding the truthfulness and honesty of Mr. Wiley in business and personal matters (paragraph 29), about his business reputation (paragraph 30), about the safety, insurability and safety of Mr. Wiley's vessel and about his commercial fishing practices (paragraph 31), and about Mr. Wiley's reputation for safe operation of his vessel and fishing activities (paragraphs 32 and 33).

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

9. That the footnote Defendants refer to as a means to absolve Defendants of blame does not do so or reduce their negligence and recklessness for the false statements referenced in Plaintiff's complaint. (Paragraphs 34 and 35).

10. That there is no connection between Mr. Wiley and whatever occurred or did not occur regarding the sinking of the La Conte (paragraph 36).

In his Second Amended Complaint, Plaintiff alleges that Defendants acted with negligence in representing to the public that Mr. Wiley was probably a homosexual or performed fellatio in reference to Mr. Wiley's crewmembers (paragraph 37); that he was an unsafe skipper; operated an unsafe and unseaworthy vessel (paragraphs 38 and 39); that he was not honest in business and his personal life (paragraph 41); that he lacked integrity (paragraph 42); made false statements regarding his business and personal reputation; Plaintiffs made false statements regarding what actions Mr. Wiley did do in business and personal matters (paragraph 45).

Mr. Wiley alleged the serious harm that Defendants' publication of matters regarding his personal and business life and practices had on the public, particularly his neighbors, friends, business associates and future business associates. (Paragraphs 57-64).

Plaintiff alleged that *The Last Run* contains serious violations of the important public policy in Alaska that Mr. Wiley is entitled to his privacy and should be free to enjoy his reputations unimpaired by the wrongful statements or suggestions of impropriety, which Mr. Wiley alleges were done by Defendants as stated in his complaint (Paragraph 65)   Again, these allegations are true for purposes of Defendant's motion.

11. Plaintiff alleged the publications were non-privileged; and to third persons and to the public in general (paragraph 69).  This applies whether they were true or not.

12. The publications were done in disregard for the truth.  (Paragraph 70).

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

13. The publications were done in reckless disregard for Plaintiff's rights of privacy. (Paragraph 70).

14. Mr. Wiley alleges special damages. (Paragraph 71).

15. Defendants violated and invaded Plaintiff's rights of privacy by negatively depicting his business character, personal and business integrity, honesty, his actions, his sexual orientation and practices, the seaworthiness, safety and insurability of his vessel and fishing practices, and subjected Mr. Wiley to ridicule, embarrassment, humiliation, worry, frights, mental anguish and scorn, particularly when untrue. (Paragraph 78).

16. Mr. Wiley alleged that the invasion of his privacy subjects him to the damage of severe mental anguish, etc. (Paragraph 78).

17. Mr. Wiley alleged specifically that Defendants' use of his name and vessel caused damages. (Paragraph 78).

18. Mr. Wiley complained of the unauthorized use of his name and vessel for Defendants' benefit. (Paragraph 80).

19. Mr. Wiley alleged appropriate damages for all of the invasion of privacy sub-parts. (Paragraphs 82-86).

20. The sub-category of appropriation of name and unauthorized use of his name and vessel name is alleged in paragraph 80.

The identifiable aspects of a person's identity or "persona" should be legally recognized as the person's "property," protectable as against unpermitted commercial use. The thought is that there is something particularly unique and worthy of legal recognition in a person's identity, such that unpermitted commercial use of a persons actual name should be illegal. The appropriation type of right of privacy recognizes the legal injury when such unpermitted use causes mental

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

injury by loss of dignity and self-esteem.  The right of publicity recognizes legal injury because such unpermitted use causes loss of financial rewards flowing from the economic value of human identity.  Rights of Publicity, and Privacy 2d, §l:22.

The recognizes common law right of privacy includes protection against appropriation for defendant's advantage of plaintiff's name or likeness, which is also known as right of publicity. Wendt v. Host Intern., Inc., 125 F.3d 806 C.A.9.Cal., 1997, Downing v. Abercrombis & Fitch, 265 F.3d 994 C.A.9.Cal., 2001.

The "appropriation" form of invasion of privacy involves the unpermitted commercial use of a person's identity which causes injury to dignity and self-esteem with resulting mental distress damages.  It involves neither falsity nor disclosure of "private" facts.  *Restatement (Second) of Torts*, §652(C).  While the right of publicity historically evolved from "appropriation privacy," the right of publicity is now a separate and distinct legal concept which recognizes the proprietary and commercial value of a person's identity and persona.  Simply put, an infringement of the right of publicity focuses upon injury to the pocketbook, which an invasion of "appropriation privacy" focuses upon injury to the psyche.  Mr. Wiley suffered both.  This type of invasion of privacy involves defendant's unpermitted use of plaintiff's identity, with damages to plaintiff's dignitary interests and peace of mind.  This type of "privacy" was the immediate historical antecedent to the "right of publicity".

Prosser's category of "appropriation privacy" involves neither falsity nor disclosure of "private" facts.  Invasion of this type of "privacy" is triggered by unpermitted use of personal identity which causes injury to self-esteem.

A "bare bones" list of the common law elements to plead and prove to establish a prima facie claim for invasion of appropriation of privacy is the following:

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

(1)  Defendant, without permission, has used some aspect of the Plaintiff's identity or persona in such a way that Plaintiff is identifiable from Defendant's use; and

(2)  Defendant's use of Plaintiff's name causes some damage to Plaintiff's peace of mind and dignity, with resulting injury measured by plaintiff's mental or physical distress and related damage.  Rights of Publicity, and Privacy 2d, §5:60

The relevant publicity and privacy cases indicate that intent to identify plaintiff is not a necessary part of plaintiff's case.  Rights of Publicity, and Privacy 2d, §3:27

The right of publicity is simply the inherent right of every human being to control the commercial use of his or her identity.  Cases for the infringement of intellectual property rights usually involve two potential issues:  (1) validity of the right asserted; and (2) infringement of that right.

Plaintiff alleges Defendants' unpermitted use of his own name and the name of his vessel damaged to his dignitary interests and peace of mind, and the absence of a defense in that Plaintiff is a private person and the use of his name and his vessel had nothing relevant to do with the subject of the publication, the sinking of the La Conte.  Defendants cannot possibly defend the use of Mr. Wiley's name.  He was a literary device to Defendants, used by them recklessly and in utter disregard for the right of Mr. Wiley, first to make a buck, then to save a buck in paperback publication costs and delays in distribution.  One can almost see the HarperCollins board applying a cost/benefits analysis in the decision by HarperCollins to distribute the paperback version of *The Last Run*; what are the costs of having to republish *The Last Run*, what are the costs for deleting the improper use of Mr. Wiley's name and that of his vessel; what are the lost profits from delay in distribution of the paperback *The Last Run*, and what are the costs to correct the unsold hardcopy versions?  Defendants then compute the costs of defense and what Defendants should

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 33 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

pay Wiley for using his name and the name of his vessel, wrongful as it was. Defendants

apparently decided a cost/benefits analysis favored use of Plaintiff's name and that their financial

best interests were benefited by the continued use of Mr. Wiley's name in *The Last Run*.

Defendant HarperCollins is an international publisher. Defendant Lewan is an

internationally acclaimed award winning author, at least according to their own publicity for *The*

*Last Run*, though it now appears Mr. Lewan had never actually published a book before. There

was a sufficient profit motive and other commercial reasons (though there need not be) for

Defendants to so blatantly violate the rights of Mr. Wiley and make Defendants conclude that the

appropriation and use of Wiley's name and that of his vessel benefited them. A jury needs to

make Defendants pay for that use. Mr. Wiley may not be a celebrity, but he need not be. It is his

name, just like the Min E is his boat. Defendants need to pay for the benefits they received by

their use of his name, just as a person would have to pay to use his boat or other items that belong

to Mr. Wiley.

### B. Invasion of Privacy by Intrusion upon Seclusion

The Alaska Supreme Court has held that:

> The [common law] right to be free from harassment and constant intrusion into
> one's daily affairs is enjoyed by all parties. Sigglekow v. State of Alaska, 731 P.2d
> at 57 (Alaska 1987). As previously discussed, that law is delineated in the
> *Restatement (Second) of Torts* §652B, entitled Intrusion upon Seclusion. That
> section provides: "One who intentionally intrudes … upon the solitude or
> seclusion of another or his private affairs or concerns, is subject to liability … if the
> intrusion would be highly offensive to a reasonable person." Luedkes v. Nabors
> Alaska Drilling, Inc., 768 P.2d 1123, 57 USLW 2501, 79 A.L. R.4[th] 75, 116
> Lab.CAs. P56,337, 4 IER Cases 139.

The essential elements for a prima facie claim for intrusion upon seclusion are made by

Plaintiff alleging that Defendants' intentional publication intruded upon his solitude or seclusion

as well as his private affairs or concerns, and that such intrusion would be highly offensive to a

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 34 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

reasonable person.  The allegations contained in the defamation claim apply to the intrusion sub-claim and Wiley also specifically claimed that his privacy, his seclusion and solitude, were invaded by Defendants, by  the publication of their book, causing him to suffer  mental and emotional damage, and that the intrusion by Defendants would be highly offensive to reasonable people.  (Paragraphs 78, 79, 81, as well as the generalizations contained in Paragraphs 1, 4, 9, 10, 11, 20, 28-45, 57-67, and 69-71).

In the Second Amended Complaint, further clarified and expressly stated in more detail all required allegations for his claim of invasion of privacy by intrusion upon seclusion in paragraphs 78(a) to 78(f).  The damages and elements are different than other claims for invasion of privacy, such as the type of damages and requirements of the degree of offensiveness of Defendants' actions.

Actionable invasion of privacy by "intrusion" generally involves some means or action offensive to a reasonable person which invades a physical or mental "zone of privacy" that is entitled to be immune from the prying of others.  One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.  Restatement Second, Torts §652B.

This type of "privacy" is invaded by intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.  Prosser noted that it is primarily mental peace of mind and seclusion that is protected here.  This right of privacy is so basic it is found in the 1948 United Nations Universal Declaration of Human Rights:  "No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence, not to attacks upon his honor and reputation.

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

Everyone has the right to the protection of the law against such interference or attacks." *U.N. Universal Declaration of Human Rights*, Article 12, Dec. 10, 1948.

Alaska has recognized that all persons are entitled to the common-law "right to be free from harassment and intrusion into one's daily affairs." This common-law right is delineated in the Restatement of Torts, whose approach Alaska adopted in its decision in <u>Luedtke v. Nabors Alaska Drilling, Inc.</u> 768 P.2d 1123, 1137 (Alaska 1989) [quoting <u>Siggelkow v. State</u>, 731 P.2d 57, 62 (Alaska 1987)] opinion. Section 652B of the Restatements states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability if the intrusion would be highly offensive to a reasonable person.

In <u>Luedtke</u> the Alaska Supreme Court stated that "courts have construed 'offensive intrusion' to require either an unreasonable manner of intrusion, or intrusion for an unwarranted purpose.

Consistent with <u>Luedtke</u>, the trial court instructed the jury on the essential elements of the claim:

> [i]n order to recover, plaintiff must prove by a preponderance of the evidence that:
>
> (1)  One or more defendants intentionally intruded upon the solitude, seclusion or private affairs or concerns of plaintiff; and
>
> (2)  A reasonable person would find this a highly offensive intrusion. <u>Wal-Mart v. Steward</u>, 990 P.2d 626 (Alaska 1999).

Consistent with <u>Luedtke</u>, the Alaska trial court instructed the jury that

> [i]n order to recover, plaintiff must prove by a preponderance of the evidence that:
>
> (1)  One or more defendants intentionally intruded upon the solitude, seclusion or private affairs or concerns of plaintiff; and
>
> (2)  A reasonable person would find this a highly offensive intrusion. .  <u>Wal-Mart v. Steward</u>, 990 P.2d 626 (Alaska 1999).

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 36 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

Spreading before the public in a highly offensive manner aspects of a person's past history and life is actionable as an invasion of privacy. *Restatement (Second) Torts*, §652 D, comment b. Truth is not a defense. Sexual relations are considered to be entirely private matters. Prosser, *Privacy*, at 397. See <u>Forsher v. Bugliosi</u>, 26 Cal 3d 792, 808, 163 Cal Rptr 628, 608 P.2d 716 (1980).

Defendants' intrusion into the seclusion and solitude of Mr. Wiley, or his private affairs or concerns, was highly offensive to him, it harmed his mental peace of mind and caused him harm, and was intentional in that it was done by Defendants. It should be up to a jury to decide whether Defendants' intrusion into Mr. Wiley's seclusion and privacy was highly offensive to reasonable people or was the appropriate type of intrusion. Again, at this stage of this case, the issue is only whether the pleadings are sufficient in alleging the claim.

Certainly having a well-publicized book by a self-described award-winning author of newspaper articles (*The Last Run* appears to be his first published book, whether fiction, non-fiction or as in this case, creative non-fiction), by a well-regarded publisher, constantly refer to Plaintiff as a cocksucker, bastard and fucking bastard, say horrible, demeaning things about him in a book which is popular with Plaintiff's former neighbors, fishermen, skippers, potential crew, even potential dates, is certainly intruding upon the solitude and seclusion of Plaintiff and his private concerns. Mr. Wiley wanted his solitude and seclusion. Defendants took it from him, ravished it, and used it to make money for themselves. A jury should be able to consider the claim.

### C.    Public Disclosure of Private Facts

The basic elements of public disclosure of private facts include:

C. MICHAEL HOUGH
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION            Page 37 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

1. Publicity to a large number of people of matters concerning a person's private life;

2. Such publication would be highly offensive to a reasonable person of ordinary sensibilities; and

3. The matters publicized are not of public concern. *Restatement (Second) Torts*, §652.

The invasion of privacy by disclosure to the public of private facts regarding Plaintiff are particularly onerous in this case, and are made by Defendants significantly more serious by the thorough and lengthy representations by Defendants of absolute accuracy, statements by Defendants that no part of the book had been created, and that everything written in *The Last Run* was documented and verifiable. Defendants indicate to the public in *The Last Run* that four years of thorough research preceded writing, publishing, marketing and distribution of the book *The Last Run*, and that *The Last Run* is a non-fiction publication; that it was thoroughly researched prior to its writing, publication, marketing and distribution; that *The Last Run* "is a work of non fiction – unlike a novel, none of the characters, situations and places described in (the) book is (sic) imaginary … ."; that the contents of the non-fiction book, *The Last Run*, are completely accurate; that the statements, dialog and contents of *The Last Run* are absolutely true; and that all efforts were made by Defendants in writing, editing, researching, publishing, distribution and marketing *The Last Run* "to write an absolutely true book; nothing beyond what was verifiable and documented has been added." Author's Note, *The Last Run*.

The statements by Defendants in the dialog they constructed concern the safety of Plaintiff and his vessel. The statements discuss and demean Mr. Wiley with regard to his commercial fishing business, making very embarrassing and offensive statements about his reputation for fairness, honesty, competency and the safety of his fishing vessel and Mr. Wiley's actions as a

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

skipper.  The unprivileged, highly personal and embarrassing statements by Defendants in the

dialog they constructed and published to the world are contained in *The Last Run*, a non-fiction

book about the sinking of the fishing vessel La Conte which sank in Alaska due to serious and life

threatening violations of basic safety practices by its owner, skipper and others, as well as the

result of negligence regarding the operation and condition of the vessel involved, La Conte,

including gross negligence, and as a result of the actions and failures to act which were done, or

refrained from being done, in reckless and utter disregard for the crew of the La Conte by the

owner, skipper and others involved in the operation of the fishing vessel La Conte.

In the Second Amended Complaint, Plaintiff made an alternative allegation regarding, the

accuracy and truthfulness of Defendants' wrongful statements, alleging in paragraph 77(a) that:

> As an alternative allegation regarding the accuracy and truthfulness of the
> statements, inferences and representations made by Defendants in *The Last Run*
> regarding Plaintiff, as stated in paragraphs 28 through 59 above, some of such
> statements, if determined by a jury or otherwise to be true, inferences or
> representations are or were true though private facts regarding Plaintiff of a
> personal, private, but true, humiliating, embarrassing and degrading nature
> regarding Plaintiff as stated by Defendants in *The Last Run*.

There is nothing "novel" about Plaintiff pleading causes of action in the alternative.  FRCP

8 provides for doing so.  Defendants callously depicted Plaintiff by name and by the name of his

vessel, doing so in incredibly vulgar and negative terms, doing so throughout *The Last Run*, at

least 32 times, all involving Wiley as a person who has nothing to do with the subject of *The Last

Run* which is about the sinking of the La Conte and rescue of its crew.

Plaintiff has causes of action against Defendants for their wrongful actions, whether or not

all or some of the vulgar and negative statements Defendants state about Plaintiff are true.  That is

why FRCP 8 allows pleadings in the alternative, Defendants simply created a story around a few

embarrassing but true events to make it marketable, from its publicizing *The Last Run* as a story

**C. MICHAEL HOUGH**
**Attorney at Law**
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

about end-of-the losers out to make a catch of a lifetime when Defendants knew the crew would barely make expenses if they caught all the fish the La Conte could hold, to using historical highly embarrassing facts from Plaintiff's history with DeCapua, enormously embellishing them, to turn Mr. Wiley into the cruel, vindictive, evil, (it has to be said) cocksucking, fucking bastard the public and jury, might conclude is true. Defendants should not be able to defend defamation and false light claims based on truth, then not be liable for disclosure to the public of those facts the jury finds true, though highly objectionable, personal, highly offensively personally embarrassing to Mr. Wiley.

The issue at this point is whether the claim is sufficiently pled, assuming the accuracy of Plaintiff's allegations regarding that claim. FRCP 8 allows the alternative allegations of truth of the statements. Defendants are hardly in a position to argue what is true and what is not true.

The deposition of Mr. Lewan will determine the basis for his outrageously offensive statements about Mr. Wiley. It is difficult at present to know the extent of Defendants' knowledge regarding Mr. Wiley. Perhaps Defendants did know that Mr. Wiley suffered a severe injury, so severe he was classified as 100% disabled. Perhaps they did know some tiny kernels of truth upon which they made their highly offensive and embarrassing statements about him, constantly attacking and belittling Mr. Wiley, his abilities and his personality, his lifestyle, or the effects of his severe head injury on him.

Defendants are making every possible effort to find some truth in their wrongful statements, or find enough truth, whether they ever even knew it when they made their wrongful statements, to defend themselves on the elements of defamation and false light, at which time they would argue that since their allegations of Wiley's poor character, incompetence as a skipper, laziness, attraction to males, his poor reputation were all true, and since Plaintiff's claims of

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

Page 40 of 44

publication of highly personal facts to the public of such offensive and intrusive facts would have

been dismissed, Defendants would escape liability for their outrageous actions toward Wiley.

Defendants rely on the reluctance of Plaintiff or any other normal person, to admit to his

weaknesses and defects. At this state of the case, the issue is whether Plaintiff made allegations of

all essential elements of a claim. Mr. Wiley has done so with regard to public disclosure of private

but true facts to the public in paragraphs 77(a) to 77(p).

Defendants seek to avoid liability by proving that the terrible statements they made about

Mr. Wiley were true, so they could avoid liability or defamation and false light, yet avoid liability

for disclosing those private and true facts to the public. Plaintiff wants Defendants to pay for

making the wrongful statements regarding Plaintiff, whether found by a jury to be true or not true,

hence the alternative allegations made by Mr. Wiley in accordance with FRCP 8.

In paragraph 66, Mr. Wiley indicates he believes that he is now, and will in the future be, a

shunned, discredited and mentally troubled man due to the wrongful, negligent and/or reckless

acts of Defendants, and such actions by Defendants have caused him other emotional harm, pain,

suffering, worry, grief, concerns and fears. In paragraph 67, he alleges that the wrongful

statements made by Defendants that he operates an unseaworthy, unsafe or uninsurable vessel, or

that he himself is unsafe and dishonest as a skipper have, or as he believes they have, already

created significant harm to his personal and business reputation and have caused him considerable

difficulties obtaining crewmembers, which will continue to harm him in the future, since he

cannot commercially fish successfully without competent and experienced crew.

Plaintiff alleges the unprivileged publication to a third party element throughout his

Second Amended Complaint. In paragraph 5, Plaintiff alleges that Defendant HarperCollins

Publishers, Inc., is the publisher, marketer and distributor of a non-fiction book written by

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 41 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

Defendant Todd Lewan, entitled *The Last Run – A True Story Of Rescue And Redemption On The Alaska Seas*, published in 2004, and marketed, sold and distributed by Defendant HarperCollins Publishers, Inc. to the public, including within the State of Alaska.

This court has already found that Mr. Wiley is a private person with regard to this case. For the most part, those who attain the public figure status have assumed roles of special prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment. Mr. Wiley never did so. If Defendants knew Mr. Wiley or ever met him, they would hang their heads in shame and embarrassment at such a ludicrous thought. In <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323; 94 S.Ct.2992 at 3009; 41 L.E.2d 789 (1974). The Supreme Court further elaborated regarding public figures as follows:

> That designation may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. <u>Gertz</u>, 94 S.Ct. 2997, 3012, . <u>Beard</u>, 796 P.2d at 1353-54; <u>Rybachek v. Sutton</u>, 761 P.2d 1013, 1014 [Alaska 1988].

A statement is conditionally privileged if its maker reasonably believes that the statement affects a sufficiently important interest of the recipient and the recipient is a person to whom its publication is otherwise within the generally accepted standards of decent conduct. Restatement (Second) of Torts §595 (1977); *see* <u>Jones v. Central Peninsula Gen. Hosp.</u>, 779 P.2d 783, 790 (Alaska 1989), recognizing a conditional privilege if the circumstances induce a correct or reasonable belief that there is information that affects a sufficiently important interest of the

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                    Page 42 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

recipient or third person.  In deciding if a publication is within "generally accepted standards of

decent conduct," an important factor is whether the statement is made in response to a request for

such information is volunteered.  French v. Jadon, Inc., 911 P.2d 20 (Alaska 1996).  Mr. Wiley

has nothing to do with the LaConte, the events causing it to sink, the cause of the deaths of two

people, and nothing to do with the heroism of the Coast Guardsmen who rescued Bob Doyle and

Mike DeCapua.

     Defendants must establish that a recognized public or private interest justified the long

series of wrongful statements by Defendants.  Schneider v. Pay'N save Corp., 723 P.2d 619, 623

(Alaska 1986) [citing William Prosser, *The Law of Torts* § 115, at 796 (4th ed. 1971)].  Whether

the occasion gives rise to a privilege is a question of law for the court.  Schneider, 723 P.2d at 623.

If the facts are in dispute, the jury determines whether a conditional privilege has been abused.  *Id.*

(citing Prosser §115, at 796).  Defendants cannot do so.

     Mr. Wiley is entitled to freedom from public statements by Defendants of his actions, both

business as well as personal, and of the effects of his actions, both business as well as personal.

These were of no proper concern or interest of Defendants.

### III.  Conclusion

     Mr. Wiley's Second Amended Complaint reads like an overly detailed, overly pled,

repetitively pled complaint using a check list from Prosser, as well as every noted authority on

invasion of privacy would have, and frequently has, stated.  Defendants' opposition goes to the

truthfulness of the allegations, not to the adequacy of the allegations.  Discovery and the normal

progression of this case will occur and the truthfulness and the adequacy of the harms, the

truthfulness of the statements in the book, and the accuracy and extent of the allegations will

become clearer and perhaps established sufficiently for summary judgment practice or motions for

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION         Page 43 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)

more definite statements, but the allegations themselves are complete and, if anything, are too

repetitive and verbose.  Plaintiff's motion to amend his complaint should therefore be granted.

Dated this 21st day of March, 2006.

MICHAEL HOUGH/ABA #7405022
Attorney for Plaintiff Wiley

## CERTIFICATE OF SERVICE

The undersigned hereby certifies and affirms that on the 21st day of March, 2006, a true and correct copy of the foregoing document was served by mail upon:

Jon Dawson
Davis Wright Tremaine, LLP
701 W. 8th Avenue, Suite 800
Anchorage, AK 99501

By:_____

h:\docs\wiley\wileylibelcomplaintamendoppresp6.doc

C. MICHAEL HOUGH
Attorney at Law
3733 Ben Walters Lane, Ste 2
Homer, Alaska 99603
Tel: (907) 235-8184
Fax: (907) 235-2420

REPLY TO DEFENDANTS' OPPOSITION TO MOTION                      Page 44 of 44
FOR LEAVE
Wiley v. HarperCollins et al.:3:05 – cv- 00118(TMB)